# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PHILIP CARPENTER,** | : | **CIVIL ACTION NO. 1:08-CV-2233** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **SUPERINTENDENT KLOPTOSKI,** | : | |
| **et al.,** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

Plaintiff Philip Carpenter ("Carpenter"), a state inmate incarcerated at the

State Correctional Institution at Dallas, Pennsylvania ("SCI-Dallas"), commenced

this civil action on December 15, 2008. The matter is presently proceeding *via* an

amended complaint filed on July 22, 2009. (Doc. 39.) Ripe for disposition are

motions to dismiss filed on behalf of a number of named defendants pursuant to

Federal Rule of Civil Procedure 12(b)(6).[1]  (Docs. 40, 42, 68, 74.) Specifically, a

motion was filed on behalf of Physician's Assistant Dan O'Brien ("O'Brien") on

July 29, 2009.  (Doc. 40.) On August 11, 2009, Keefe Group Incorporated ("Keefe")

---

[1]Also pending, but not yet ripe for disposition, is the motion to dismiss the
amended complaint filed on behalf of Commonwealth defendants Governor Edward
Rendell, Jeffrey A. Beard, Sharon M. Burks, Dorina Varner, Robin Lucas, Mark D.
Goldberg, Alan B. Fogel, Health Care Administrator Ginnochetti, Health Care
Administrator Leskowski, Mr. Miskell Superintendent James T. Wynder, Deputy
Superintendent Mooney, Deputy Superintendent McGrady, Norman Demming,
Deputy Superintendent Kneiss, Unit Manager Gaylen Miller, Superintendent
Kloptoski, and Nurse Irene. (Doc. 79). When it becomes ripe, this motion will be
addressed in a separate memorandum and order.

filed its motion. (Doc. 42.) Defendants Prison Health Care Industries ("Prison Health Care"), Dr. Bohinski ("Bohinski"), and Cheryl Wisniewski ("Wisniewski") filed a motion on December 10, 2009. (Doc. 68.) Finally, defendant Dr. Jesse ("Jesse") joined (Doc. 74) in the motions filed on behalf of Keefe (Doc. 42) and Prison Health Care, Bohinski, and Wisniewski (Doc. 40). The motions will be granted in part and denied in part.

## I.   **Allegations of the Amended Complaint**

Carpenter has been incarcerated at SC I-Dallas, and housed on F-Block for the past twenty-three years. (Doc. 39, at 1.) He alleges that there is a contractual agreement between the State of Pennsylvania and Keefe whereby Keefe provides all commissary items to all state correctional facilities. (Id. at 19, ¶ 37.) Further, all prisoners are "required to purchase any and all commissary items which the D.O.C. approved (sic) from Defendants Keefe Group, Inc." (Id. at 19, ¶ 38.)

He alleges that at some time prior to December 14, 2006, he purchased from the commissary a "shower shoe" supplied by Keefe. (Doc. 39, at 20, ¶ 40.) On December 14, 2006, he slipped and fell in the shower area of F-Block when the strap on one of his shower shoes snapped in an overcrowded shower area causing him neck, back, head and shoulder injuries.

Carpenter pursues seven causes of action as a result as a result of this incident and events that transpired thereafter. In his first cause of action, he asserts that all defendants have failed to provide him the protection he is due under the Americans with Disabilities Act. (Doc. 39, at 27.) Specifically, he alleges that

there are no slip guards or handrails present in the shower area of F-Block that could have prevented or mitigated his injury. (Id. at ¶ 95.) He next asserts that the policies and practices of defendants constituted cruel and unusual punishment in violation of the Institutionalized Persons Act found at 42 U.S.C. § 2000dd. (Id. at 28, ¶ 100.)

The third cause of action is an Eighth Amendment claim alleging that the conditions of his incarceration constitute cruel and unusual punishment as follows:

> Plaintiff, during his time of being housed in SCI Dallas has watched the gradual deterioration of conditions to the point where he has been housed in a cell for numerous winters with no heat, breakdowns in hot water, feces backing up into the cells from adjacent cells because of inadequate plumbing systems to accommodate the overpopulation of SCI Dallas. Plaintiff has observed inmates dying in cells because there were no emergency call buttons to contact officers, and plaintiff himself has had to wake up from seizures where he could not get help because the guards [sic] office was too far away for him to yell.

> Plaintiff has been exposed to numerous instances of disease outbreaks where entire blocks within SCI Dallas had to be quarantined because of various outbreaks of highly contagious diseases, and had to get water out of trash cans for days because of break downs in the plumbing systems due to overcrowding.

(Id. at 2.) He contends that "the wholesale warehousing of prisoners has created egregious hazards that are detrimental to the safety and well being of the plaintiff on a daily basis and are the direct result of the negligible (sic) action on the part of all defendants." (Id. at 28, ¶ 102.)

He also is pursing an Eighth Amendment claim of deliberate indifference to his medical needs against moving defendants following his fall in the shower. (Id. at 20-22, ¶¶ 42-62.) He alleges that Prison Health Care deprived him of his right to be

free from cruel and unusual punishment "in that they failed to provide competent staff to provide medical care under a contractual agreement." (Id. at 11, ¶ 16.) He further alleges the following:

> Plaintiff has been denied competent medical treatment for the injuries he has sustained wherein the defendants never even actually gave him a physical examination after the injuries he sustained. Plaintiff was not put under observation after sustaining head, neck, and back injuries. He was given nothing for pain management after staff were repeatedly told that the pharmacy of the institution did not have any of his already prescribed medications. Therefore, plaintiff was left to lay in a cell in pain for three days, with no pain management medication, without heat in his cell in freezing temperatures, with no call button to call for help in case of major complications or the onset of a seizure for which he was being treated prior to sustaining the injuries claimed.

> When the plaintiff reported to sick call on the following day of sustaining injuries during his fall in the overcrowded shower area, staff specifically stated, "Oh, you're okay. You're not hurt so stop taking up my time!". . . . Then, to make matter worse, the Physician's Assistant denied him permission to see a doctor and merely ordered X-Rays of the "wrong" area of his body. An area he knew that the plaintiff had not sustained injuries in order to be vindictive.

> The medical staff didn't even review his files at any time to see that the plaintiff had previously been being treated because of two injures he had sustained to his head.

(Doc. 39, at 2-3, ¶ 2.) He further alleges that defendant Wisniewski never did a physical examination, ordered x-rays for regions of his body that were not injured, and ignored his complaints of pain and of the conditions he was experiencing in his cell on F-block. (Id. at 21, ¶¶ 53- 56.) Likewise, defendant O'Brien never examined him, ignored his past medical history and his requests for pain medication. (Id. at 22, ¶¶ 57-58, 60-61.) Upon discovering that the wrong areas were x-rayed, O'Brien ordered new x-rays, which confirmed the sustained injuries. (Id. at ¶ 59.)

Carpenter alleges that defendant Bohinski, as the head doctor at SCI-Dallas, ignored his repeated complaints and instead "referred him back to the same individuals who were acting directly against the plaintiff's rights. This showed deliberate indifference and a direct failure to provide competent medical care. . . ." (Id. at 12-13, ¶ 19.) He also alleges that in evaluating his single cell status, defendant Jesse denied him "adequate and competent psychological treatment in that she showed deliberate indifference to the plaintiff's psychological needs." (Id. at 14, ¶ 23.)

Causes of action four and five raise Fourteenth Amendment equal protection and First Amendment retaliation claims, respectively. (Id. at 29, ¶¶ 103-06.) Carpenter also avers that he was denied due process when his single cell status was revoked. The allegations in support of these claims are as set forth below:

> Defendants have also engaged in retaliatory actions by threatening the plaintiff and falsifying misconduct charges to impede the plaintiff's efforts to raise the claims set forth above, and by taking the plaintiff's single cell status and housing him with other inmates in a cell that was never built to house two people in furtherance of their retaliation of the plaintiff for pursuing the above claims. Plaintiff was denied due process in the taking of a single cell status he has had for over twenty years solely on the basis of retaliation and to further the cruel and unusual hazards engendered in the current prison overcrowding that resulted in plaintiff's injuries. Plaintiff was further denied equal protection where he was not granted a meaningful review in accordance with the policies set forth by the DOC. Instead the plaintiff was told by the psychology staff (defendant Dr. Jesse) that they were not reviewing his record because they could not find them and because they had too many cases to waste time even looking for them, and when the plaintiff expressed his concern for his safety because he had already been raped once, was cruelly told, "we have a don't ask don't tell policy in regard to rape", by a psych deparptment [sic] staff member who interviewed him "after" his single cell had already been taken in violation of DOC Policy.

> When plaintiff began to file complaints about this matter he was mysteriously issued a misconduct that he was never issued, and called to a hearing on it before defendant Gaylen Miller (F-Block Unit Manager) and told that he was guilty because he said so and because he liked to run his mouth and get guys to help him file paperwork. Plaintiff was never given notice, had documents falsified to intimidate him by claiming that plaintiff plead guilty when he did not and was done an [sic] retaliation for his redress of grievances regarding violations of his civil rights.

(Doc. 39, at 6-7.) He also states that he has been "threatened to stop pursuing this instant case in retaliation for bringing these matters before the court." (Id. at 2.)

In the sixth cause of action, entitled "Commercial Trade Violations", he seeks to impose liability on defendants based on the sale of defective shower shoes. (Doc. 39, at 30-31, ¶ 108.) He alleges that despite numerous complaints, defendants continued to sell the items with total disregard for the health and well being of the rights of individuals to be free from hazardous materials and materials that contain defects. (Id. at 31, ¶ 108.)

The seventh cause of action contains a RICO claim based on what Carpenter describes as a "monopoly in trade . . . created . . . *via* policies of government entities limiting trade to exclusive parties in violation of commercial law, Constitutional Law and 42 U.S.C. § 1983." ((Doc. 39, at 30, ¶ 109.)

## II.    **Standard of Review**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all

reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The plaintiff must present facts that, if true, demonstrate a plausible right to relief. See FED. R. CIV. P. 8(a) (stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); Ashcroft v. Iqbal, ---U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (explaining that Rule 8 requires more than "an unadorned, the-defendant unlawfully-harmed-me accusation"); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). Thus, courts should not dismiss a complaint for failure to state a claim if it contains "enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise

a reasonable expectation that discovery will reveal evidence of the necessary element." Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556). Under this liberal pleading standard, courts should generally grant plaintiffs leave to amend their claims before dismissing a complaint that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).

## III. Discussion

### A. Americans With Disabilities Act

Title II of the Americans With Disabilities Act ("ADA") provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. As used in Title II of the ADA, "public entity" is defined as: "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority (as defined in section 103(8) of the Rail Passenger Service Act [49 U.S.C.S. § 24102(4) ] )." 42 U.S.C. § 12131(a). State prisons fall squarely within the statutory definition of "public entity" in Title II of the ADA. Pennsylvania Dep't of Corrections v. Yeskey, 524 U.S. 206, 210 (1998). However, the plain language of § 12132 applies only to public entities not individuals. Yeskey v. Commonwealth, 76 F. Supp. 2d 572, 575 (M.D.Pa. 1999) (holding that individuals are not liable under Title II because it

prohibits discrimination in programs of a "public entity" or discrimination "by any such entity" and "public entity" is not defined in Title II to include individuals). None of the moving defendants qualify as a public entity. Therefore, the ADA is inapplicable to them and their motions to dismiss will be granted.

**B.     42 U.S.C.A. § 2000dd**

Carpenter also attempts to advance a claim under the "Institutionalized Person Protection Act" at 42 U.S.C.A. § 2000dd. (Doc. 39, at 28.) There exists no such act. However, the Detainee Treatment Act of 2005, Pub.L. 109-148, § 1003(a), 119 Stat. 2739, is codified at 42 U.S.C.A. § 2000dd, and governs the prohibition on cruel, inhuman, or degrading treatment or punishment of persons under custody or control of the United States Government. 42 U.S.C.A. § 2000dd (stating that "[n]o individual in the custody or under the physical control of the United States Government, regardless of nationality or physical location, shall be subject to cruel, inhuman, or degrading treatment or punishment.") Clearly, this act does not apply to the matter *sub judice* as Carpenter is not in the custody or control of the United States government. The motions will be granted with respect to this claim.

**C.     42 U.S.C. § 1983**

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. See 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any

> citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). Merely private conduct, no matter how discriminatory or wrongful is excluded from the reach of § 1983. Blum v. Yaretsky, 457 U.S. 991, 1002 (1982)). Whether a private entity acted under color of law "turns on whether there is a sufficiently 'close nexus between the State and the challenged action.' " Young v. Halle Housing Assoc., 152 F. Supp. 2d 355, 362 (S.D.N.Y. 2001) (quoting Jackson v. Metro. Edison Co., 419 U.S. 345, 351 (1974)).

Carpenter alleges that Keefe, "under contract to provide commissary services to all Pa. State Correctional Facilities is so entrenched and integral to prison correctional industries that they are in fact acting under color of state law." (Doc. 39 at 17, ¶ 32.) He states that all inmates were required to purchase all commissary items, which were approved by the DOC, from Keefe. In support of its motion to dismiss, Keefe, in relying on law of the district courts of this circuit and other circuits, argues that, as a private vendor it does not become a state actor merely by selling its products to the government. (Doc. 46, at 20.) Keefe further argues that

the allegations contained in the complaint are conclusory and "are wholly insufficient to satisfy the pleading standard in <u>Twombly</u> and <u>Iqbal</u>." (<u>Id.</u> at 24.) Carpenter argues that there is "an entire industry that has been established whereby inmates are not buying solely form the Pa. DOC. We are in fact purchasing from a correctional industry that has been established via a contractual agreement entered into by Keefe Group Inc. and the Pa. DOC. . . . At present, inmates no longer purchase directly from the state. Instead we now purchase directly from Keefe Group Inc. and those items purchased are shipped to each institution on a weekly basis from warehouses inside the prison walls where Keefe is keeping and holding it's [sic] stock for said purpose." (Doc. 56, at 8.) He further argues that contrary to the law relied upon by Keefe, he has indeed asserted in his amended complaint that Keefe acted under color of state law and that there is a sufficiently close nexus between the state and Keefe's sale of commissary items. (Doc. 66, at 12.) He also points out that "it is the duty of this court to allow such claims to procede [sic] as a matter of law since the instant complaint must be interpreted in the light most favorable to the plaintiff and should only be dismissed if taken as 'true', the plaintiff could not be granted relief as a matter of law." Carpenter has advanced allegations sufficient to state a claim that Keefe acted under color of state law. Consequently, defendant Keefe's motion will be denied on this ground and it will be presumed that Keefe acted under color of state law for purposes of analyzing the constitutional claims.

1.      <u>Eighth Amendment</u>

   a.      *Conditions of Confinement*

The Eighth Amendment does not mandate that prisons be free of discomfort. <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992). Rather, a prisoner must show that he has been deprived of "the minimal civilized measure of life's necessities, such as food, clothing, shelter, sanitation, medical care, or personal safety." <u>Farmer v. Brennan</u>, 511 U.S. 825, 832, 834 (1994) (citations omitted). To violate the Eighth Amendment, conditions of confinement must be dangerous, intolerable or shockingly substandard. <u>Riley v. Jeffes</u>, 777 F.2d 143, 147 (3d Cir. 1985); <u>Inmates of Allegheny County Jail v. Pierce</u>, 612 F.2d 754, 757 (3d Cir. 1979).

   An Eighth Amendment violation occurs when the prison official is deliberately indifferent to inmate health or safety and when this act or omission results in the denial of "the minimal civilized measure of life's necessities." <u>See Farmer</u>, 511 U.S.at 832 (1994). Therefore, a prison official can be held liable under the Eighth Amendment for denying humane conditions of confinement if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. <u>See id.</u> at 847, 114 S.Ct. 1970. Claims of negligence, without a more culpable state of mind, do not constitute "deliberate indifference." <u>See Singletary v. Pennsylvania Dept. Of Corrections</u>, 266 F.3d 186, 193 n. 2 (3d Cir. 2001).

Carpenter attempts to advance a slip and fall claim as an Eighth Amendment claim of deliberate indifference to his safety. The allegations contained in the amended complaint fall well short. At no point does Carpenter allege that the circumstances surrounding his slip and fall resulted in a denial of the minimal civilized measure of life's necessities. At most, the allegations amount to mere negligence, breach of contract, and product liability claims and are not actionable under § 1983. Consequently, the Eighth Amendment claim, as it relates to the slip and fall, will be dismissed as to all moving defendants.

Carpenter alleges numerous other objectionable conditions of confinement, including, *inter alia*, exposure to disease, an unheated cell, lack of hot water, and inadequate plumbing which led to a lack of drinking water and sewer back-ups. "A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . Personal involvement may be shown through allegations of personal direction or actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988); see also, Rizzo v. Goode, 423 U.S. 362 (1976); see Atkinson v. Taylor, 316 F.3d 257 (3d Cir. 2003); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). Such allegations, however, must be made with appropriate particularity. Rode, 845 F.2d at 1207-08. Further, the United States Court of Appeals for the Third Circuit requires a defendant's contemporaneous, personal knowledge and acquiescence, in order to establish personal knowledge. Id. The allegations against moving defendants are general and conclusory and do not satisfy the requirement that a defendant be personally

involved in the denial of inhumane conditions of confinement. For instance, Carpenter fails to allege that either Keefe or Prison Health Care had any involvement in the maintenance of prison cells, plumbing or sewer maintenance. Likewise, he fails to allege that the medical defendants, namely Bohinski, Wisniewske, O'Brien and Jesse were responsible for any of these maintenance issues. Consequently, this claim is subject to dismissal.

Courts are cautioned that because of the liberal pleading standard, a plaintiff should generally be granted leave to amend before dismissing a claim that is merely deficient. See Grayson, 293 F.3d at 108. Federal Rule of Civil Procedure 15(a) provides that if a party has already amended its complaint, as is the case here, it may only amend again with consent of the other parties or leave of Court, which "should be freely given when justice so requires." The federal rules allow for liberal amendments in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." Foman v. Davis, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted). The United States Supreme Court, however, has stated that leave to amend under Rule 15 may be denied in cases of (1) undue delay; (2) bad faith or dilatory motive; (3) undue prejudice; or (4) futility of amendment. See Foman, 371 U.S. at 182; see also Arthur v. Maersk, Inc., 434 F.3d 196, 204-05 (3d Cir. 2006) (stating that "leave to amend must generally be granted unless equitable considerations render it otherwise unjust"); see also Long v. Wilson, 393 F.3d 390, 400 (3d Cir. 2004) (stating "absent undue or substantial prejudice, an amendment should be allowed under Rule 15(a) unless denial can be grounded in bad faith or

dilatory motive, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed or futility of amendment") (citations and internal quotation marks omitted); Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000) (summarizing factors to consider under Rule 15). "Amendment of the complaint is futile if the amendment will not cure the deficiency in the original complaint or if the amended complaint cannot withstand a renewed motion to dismiss." Jablonski v. Pan American World Airways, Inc., 863 F.2d 289, 292 (3d Cir. 1988)(citing Massarsky v. General Motors 706 F2d 111, 125 (3d Cir. 1983)).

Amendment of this claim will not cure the deficiencies set forth above. Taking into consideration the role of each defendant within the prison system and the nature of the positions held by the individual defendants, it is clear that any amendment to this claim would not withstand a renewed motion to dismiss, and is therefore futile. However, because Carpenter also pursues conditions of confinement claims against the Commonwealth defendants, who have a motion to dismiss pending, but not yet ripe for disposition, the conditions of confinement claims will be revisited, to the extent necessary, when the court considers the Commonwealth defendants' motion.

b.     *Medical*

To demonstrate a prima facie case of Eighth Amendment cruel and unusual punishment based on the denial of medical care, as is alleged here, a plaintiff must establish that defendants acted "with deliberate indifference to his or her serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104 (1976); Durmer v. O'Carroll, 991

F.2d 64, 67 (3d Cir. 1993). There are two components to this standard: First, a plaintiff must make an "objective" showing that the deprivation was "sufficiently serious," or that the result of the defendant's denial was sufficiently serious. Additionally, the plaintiff must make a "subjective" showing that defendant acted with "a sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991); see also Montgomery v. Pinchak, 294 F.3d 492, 499 (3d Cir. 2002). The "deliberate indifference to serious medical needs" standard is obviously met when pain is intentionally inflicted on a prisoner, when the denial of reasonable requests for medical treatment exposes the inmate to undue suffering or the threat of tangible residual injury, or when, despite a clear need for medical care, there is an intentional refusal to provide that care. See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004) (quoting White v. Napoleon, 897 F.2d 103, 109 (1990); Monmouth County Corr. Inst. Inmates v. Lensario, 834 F.2d 326, 346 (3d Cir. 1987).

Keefe seeks dismissal of this claim based on Carpenter's failure to allege personal involvement in the alleged inadequate medical care. (Doc. 46, at 31, n.9.) A non-physician defendant cannot be held liable for being deliberately indifferent to an inmate's medical needs where, as here, the inmate is receiving treatment from the institution's health care staff. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993.) There is no question that Keefe is a non-medical defendant and it is clear from the allegations of the complaint that Carpenter was receiving treatment from the institution's health care staff. Consequently, the claim against this defendant is subject to dismissal.

Inasmuch as Carpenter alleges that Prison Health Care "deprived plaintiff of his right to be free from cruel and unusual punishment in that they failed to provide competent staff to provide medical care under a contractual agreement," this claim must be dismissed. (Doc. 39, at 11, ¶ 16.) He fails to allege the existence of any policy or custom of Prison Health Care that deprived him of his constitutional rights. Liability cannot be based on *respondeat superior* liability alone. It is well-settled that:

> A private health care provider acting under color of state law, . . . , can be liable under § 1983 for Eighth Amendment violations stemming from inadequate medical treatment of prisoners. Such liability cannot rest on *respondeat superior* alone, however, but instead must be based on some policy, practice, or custom within the institution that caused the injury. Thus, to survive a motion for summary judgment, a plaintiff must present evidence of a policy, practice, or custom which caused or exacerbated a serious medical need and was instituted with deliberate indifference to the consequences.
>
> For the purposes of § 1983 analysis, a policy is made when a decision-maker with final authority to establish such a policy issues an official proclamation, policy or edict. A custom, on the other hand, "can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." As a result, custom can be established' by "proof of knowledge and acquiescence." Under the <u>Estelle</u> test, deliberate indifference can be shown in the instant case if there is an established policy or custom that caused [the prison health care provider] to intentionally deny or delay access to necessary medical treatment for non-medical reasons, or if officials intentionally interfered with a course of treatment once prescribed.

<u>Johnson v. Stempler</u>, No. 00-711, 2007 WL 984454, at *4 (E.D. Pa. Mar. 27, 2007) (internal citations omitted). Carpenter makes no such allegations and seeks to sue Prison Health Care solely as the entity responsible for providing health care.

Therefore, the deliberate indifference to medical care claim against Prison Health Care must be dismissed for failure to state a claim for which relief may be granted. See Riddick v. Modeny, 250 Fed. App'x. 482, 483-84 (3d Cir.2007) (affirming district court's granting of private health care provider's motion to dismiss under Rule 12(b)(6), where court found "absent any allegation from which the court could infer Prison Health Services's direct involvement in the alleged deprivation of his constitutional rights, it was not liable on a theory of *respondeat superior*." ).  Given that Carpenter's theory of liability against Prison Health Care is not a viable theory, and that an amendment would not cure the deficiency of the amended complaint, leave to amend would be futile.  Moreover, as noted *infra*, the individual medical providers allegedly responsible for Carpenter's medical treatment are named defendants against whom the complaint will proceed.

Defendant Bohinski is sued in his capacity as the "head doctor of SCI Dallas." (Doc. 39, at 13, ¶ 19.)  To maintain a claim for supervisory liability, plaintiff "must show:  1) that the supervising official personally participated in the activity; 2) that the supervising official directed others to violate a person's rights; or 3) that the supervising official had knowledge of and acquiesced in a subordinate's violations." Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).  It is alleged that Bohinski "had a direct responsibility to oversee all medical care provided by his assistants. Plaintiff wrote to him repeatedly and was denied review by this individual and was instead referred by him back to the same individuals who were acting directly

against the plaintiff's rights." (Doc. 39, at 13, ¶ 19.) These allegations suggest that Bohinski may have had knowledge of, and acquiesced in, the alleged constitutional violations of his subordinates. The motion will therefore be denied as to this defendant.

With respect to defendants O'Brien and Wisniewski, plaintiff alleges that both denied him medical care in failing to examine him following his slip and fall, treat him with pain medication, review his prior history of head trauma, and place him under medical observation. (Doc. 39, at 13, ¶¶ 20-21.) These allegations are sufficient to state an Eighth Amendment claim of denial of medical care against these defendants.

Additionally, the allegations that defendant Jesse denied Carpenter adequate and competent psychological treatment in that she showed deliberate indifference to his psychological needs in evaluating his eligibility for single cell status, are sufficient to state an Eighth Amendment claim.

  2. <u>Fourteenth Amendment</u>

   *a.* *Equal Protection*

Carpenter alleges that he was denied equal protection because he was not granted a meaningful review of the revocation of his single cell status. "The Equal Protection Clause commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws.'" <u>Vacco v. Quill</u>, 521 U.S. 793, 799 (1997); U.S. Const. amend. XIV, § 1. This is not a command that all persons be treated alike, but, rather, a direction that all persons similarly situated be treated

19

alike.  See City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985);

Artway v. Attorney General of State of N.J., 81 F.3d 1235, 1267 (3d Cir. 1996). To

state an equal protection claim a plaintiff must allege that: (1) he or she was a

member of a protected class, (2) he or she was treated differently from similarly

situated persons outside of his or her protected class, and (3) the resultant

discrimination was purposeful or intentional rather than incidental.  Tillman v.

Lebanon County Corr. Facility, 221 F.3d 410, 423-24 (3d Cir. 2000).

The first hurdle that plaintiff must clear is the requirement that the named

defendants be personally involved in the alleged constitutional deprivation.  The

complaint is devoid of any allegations of personal involvement on the part of Keefe,

Prison Health Care, O'Brien, Bohinski, or Wisniewski, in the decision to revoke

Carpenter's single cell status.  Further, the allegations that defendant Jesse failed to

review his records with regard to the single cell status, are insufficient to state an

equal protection claim.  He also fails to allege that he was a member of a protected

class or that he was treated differently than other members of a protected class.

Thus, he has failed to allege a plausible equal protection claim.  Further, because no

version of the facts would raise a reasonable expectation that discovery would

reveal evidence of the necessary equal protection claim elements, affording plaintiff

leave to amend the complaint would be futile.

> b.    *Due Process*

Prison conditions do not impact a protected liberty interest unless they result

in an "atypical and significant hardship on the inmate in relation to the ordinary

incidents of prison life." <u>Sandin v. Conner</u>, 515 U.S. 472 483(1995). "[L]iving in a double-cell is an expected ordinary incident of prison life, [ and] retaining single-cell status is not a protected liberty interest." <u>Austin v. Chesney</u>, No. 93-4010, 1995 WL 498720, at *3 (E.D.Pa., Aug. 22, 1995.)  Carpenter, therefore, has no Fourteenth Amendment right to be housed in a single cell and his right to due process is not offended by any decision to place him in a cell with another inmate.

      3.   <u>First Amendment</u>

Carpenter alleges that he was retaliated against in violation of the First Amendment when he was "threatened to stop pursuing this instant case in retaliation for bringing these matters before the court," issued false misconducts, and stripped of his single cell status.  (Doc. 39, at 6.)  The First Amendment offers protection for a wide variety of expressive activities.  <u>See</u> U.S. Const. amend I. These rights are lessened, but not extinguished in the prison context, where legitimate penological interests must be considered in assessing the constitutionality of official conduct.  <u>See</u> <u>Turner v. Safley</u>, 482 U.S. 78, 89 (1987). Retaliation for expressive activities can infringe upon an individual's rights under the First Amendment.  <u>See</u> <u>Allah v. Seiverling</u>, 229 F.3d 220, 224-25 (3d Cir. 2000). To prevail on a retaliation claim under 42 U.S.C. § 1983, plaintiff must demonstrate (1) that he was engaged in protected activity; (2) that he suffered an "adverse action" by government officials; and (3) that there is "a causal link between the exercise of his constitutional rights and the adverse action taken against him." <u>Rauser v. Horn</u>, 241 F.3d 330 (3d Cir. 2001) (quoting <u>Allah</u>, 229 F.3d at 225).

Even taking these allegations as true, Carpenter fails to allege that any of the moving defendants threatened him to stop pursuing this matter, issued him a false misconduct, or stripped him of his single cell status.[2]  Consequently, the motions will be granted, and the retaliation claims against moving defendants will be dismissed for lack of personal involvement.

Affording Carpenter leave to amend would be futile because the deficiencies of the retaliation claim, as lodged against these defendants, cannot be cured.  It bears noting that Carpenter also pursues retaliation claims against the Commonwealth defendants and that these claims are among those raised in the motion to dismiss filed on behalf of the Commonwealth defendants.  Therefore, the retaliation claim will be revisited, to the extent necessary, when the court considers the motion to dismiss filed on their behalf.

**D.      Commercial Trade Violations**

Carpenter also seeks to hold defendants liable for breach of contract based on the sale of "defective items, improperly labeled, and advertised while knowing that these items presented a health hazard to plaintiff.  (Doc. 39, at 30, ¶ 108).   The court declines to exercise supplemental jurisdiction over these pendent state law claims.  28 U.S.C. § 1367(c)(3).  The claims will be dismissed without prejudice to

---

[2]Carpenter specifically alleges that defendant Jesse was involved in the issue of the revocation of his single status "after" his single cell had already been taken. (Doc. 39, at 6.)

any right plaintiff may have to pursue them in state court. In so holding, the court expresses no opinion as to the merits of any such claims.

To the extent that his claim can be considered as having been brought under the Federal Trade Commission Act, 15 U.S.C. § 45, defendant Keefe correctly argues that Federal Trade Commission Act regulations do not create private rights. Zhang v. Southeastern Financial Group, Inc., 980 F. Supp. 787 (E.D.Pa. 1997). There is no private right of action under Federal Trade Commission Act. Federal Trade Commission Act, § 5(a), 15 U.S.C.A. § 45(a). Martino v. Everhome Mortg., 639 F. Supp. 2d 484 (D.N.J. 2009); see also, Skypala v. Mortgage Electronic Registration Sys. Inc., No. 08-5867, 2009 WL 2762247, at *1 n. 1 (D.N.J. Sept. 1, 2009) (collecting cases). Rather, the act contains an exclusive administrative enforcement mechanism vested only in the Federal Trade Commission. Wisniewski v. Rodale, Inc., 510 F.3d 294, 304 (3d Cir. 2007). This cause of action will be dismissed.

### E.    RICO Violations

Carpenter attempts to advance a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO" or "the Act"), 18 U.S.C. §§ 1961-1968. RICO prohibits "any person . . . associated with any enterprise engaged in . . . interstate or foreign commerce [from] conduct[ing] or participat[ing], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). The Act authorizes "any person injured in business or property by reason of a violation of 18 U.S.C. § 1962" to enforce RICO through private suits for money damages. 18 U.S.C. § 1964(c). Consequently, a plaintiff seeking recovery

under RICO must satisfy the standing requirement of injury to property or business as a proximate result of the alleged pattern of racketeering activity. <u>Sedima, S.P.R.L., v. Imrex Company, Inc.</u>, 473 U.S. 479 (1985) (finding that a plaintiff "only has standing if, and can only recover to the extent that, he has been injured in his business and property by the conduct constituting the [RICO] violation."); <u>see</u> <u>Maio v. Aetna, Inc.</u>, 221 F.3d 472, 482 (3d Cir. 2000) (considering standing in the context of whether appellants have alleged a valid RICO injury to business or property); <u>see also</u> <u>Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.</u>, 140 F.3d 494, 520 (3d Cir. 1998) (pointing to section 1964(c) as the "standing requirement" for RICO suits). The Third Circuit has read section 1964(c) "as requiring two distinct threshold showings: (1) that the plaintiff suffered an injury to business or property; and (2) that the plaintiff's injury was proximately caused by the defendant's violation of 18 U.S.C. § 1962." <u>Maio</u>, 221 F.3d at 483. Personal injuries, loss of earnings, and other indirect injuries do not confer standing under RICO. <u>See</u> <u>Anderson v. Ayling</u>, 396 F.3d 265, 270-71 (3d Cir.2005) (upholding dismissal of the plaintiffs' RICO claims because the complaint failed to allege a direct, causal link between the plaintiff's loss of employment and the alleged racketeering activity); <u>Genty v. Resolution Trust Corp.</u>, 937 F.2d 899, 918-19 (3d Cir. 1991) (concluding that personal injuries cannot confer standing under RICO). Carpenter lacks standing to bring a RICO claim because he fails to meet the threshold requirement of injury to business or property. The RICO claim will be dismissed.

## IV.    Conclusion

Based on the foregoing, defendants' motions to dismiss plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (Docs. 40, 42, 68, 74) will be granted in part and denied in part.

An appropriate order will issue.

      _S/ Christopher C. Conner_
CHRISTOPHER C. CONNER
United States District Judge

Dated:     March 10, 2010

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PHILIP CARPENTER,   : CIVIL ACTION NO. 1:08-CV-2233
          :
    **Plaintiff**   : (Judge Conner)
          :
  **v.**       :
          :
SUPERINTENDENT KLOPTOSKI, :
et al.,        :
          :
    **Defendants**  :

## ORDER

_____AND NOW, this  day of 10th day of March, 2010, upon consideration of

defendants' motions to dismiss plaintiff's amended complaint pursuant to Federal

Rule of Civil Procedure 12(b)(6) (Docs. 40, 42, 68, 74), and in accordance with the

foregoing memorandum, it is hereby ORDERED that:

1. Defendant O'Brien's motion to dismiss (Doc. 40) is granted in part and denied in part.  The motion is DENIED with respect to the Eighth Amendment claim of denial of adequate medical treatment.  The motion is GRANTED in all other respects.  Affording plaintiff leave  to amend is futile.  Defendant O'Brien shall file an answer to the Eighth Amendment denial of adequate medical treatment claim on or before March 19, 2010.

2. Defendant Keefe's motion to dismiss (Doc. 42) is granted in part and denied in part.  The motion is DENIED on the grounds that Keefe is not a state actor.  The motion is GRANTED in all other respects and the amended complaint is dismissed in its entirety against defendant Keefe.  Affording plaintiff leave to amend is futile.  The Clerk of Court is directed to TERMINATE Keefe as a defendant.

3.   The motion to dismiss filed on behalf of defendants Prison Health
     Care, Bohinski, and Wisniewski is granted in part and denied in part.
     The motion is GRANTED with respect to Prison Health Care on all
     claims.  Affording plaintiff leave to amend is futile.  The amended
     complaint is dismissed in its entirety as to this defendant.  The Clerk of
     Court is directed to TERMINATE Prison Health Care as a defendant.
     The motion is DENIED with respect to defendants Bohinski and
     Wisniewski on the Eighth Amendment claim of denial of adequate
     medical treatment.  The motion, as it relates to Bohinski and
     Wisniewski, is GRANTED in all other respects.  Allowing plaintiff to
     amend is futile.  Defendants Bohinski and Wisniewski shall file an
     answer to the Eighth Amendment denial of adequate medical
     treatment claim on or before March 24, 2010

4.   Defendant Jesse's motion to dismiss (Doc. 74) is granted in part and
     denied in part.  The motion is DENIED with respect to the Eighth
     Amendment claim of denial of adequate medical treatment.  It is
     GRANTED in all other respects.  Allowing amendment is futile.
     Defendant Jesse shall file an answer to the Eighth Amendment denial
     of adequate medical treatment claim on or before March 24, 2010.


     S/ Christopher C. Conner
     CHRISTOPHER C. CONNER
     United States District Judge