# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PHILIP CARPENTER,         :     CIVIL ACTION NO. 1:08-CV-2233
                                    :
          **Plaintiff**         :     (Judge Conner)
                                    :
      **v.**                       :
                                    :
**SUPERINTENDENT KLOPTOSKI,**    :
**et al.,**                                 :
                                    :
         **Defendants**       :

## <u>MEMORANDUM</u>

Plaintiff Philip Carpenter ("Carpenter"), a state inmate incarcerated at the State Correctional Institution at Dallas, Pennsylvania ("SCI-Dallas"), commenced this civil action on December 15, 2008. The matter is presently proceeding *via* an amended complaint filed on July 22, 2009. (Doc. 39.) Ripe for disposition is the motion to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) filed on behalf of Commonwealth defendants Edward Rendell, Jeffrey A. Beard, Sharon M. Burks, Dorina Varner, Robin Lucas, Mark D. Goldberg, Alan B. Fogel, Tom Leskowski, Kevin Miskell, James T. Wynder, Vincent Mooney, James McGrady, Norman Demming, Edward Kneiss, Galen Miller, Michael Kloptoski, and Irene Bezdiecki[1]. (Doc. 79.) For the reasons set forth below, the motion will be granted in part and denied in part.

---

[1]Bezdiecki is identified in the amended complaint as "Nurse Irene." (Doc. 39.)

## I.  **Allegations of the Amended Complaint**

Carpenter has been incarcerated at SCI-Dallas, and housed on F-Block for the past twenty-five years.  (Doc. 39, at 1.)  Some time prior to December 14, 2006, he allegedly purchased from the commissary a "shower shoe" supplied by commissary vendor Keefe Group, Incorporated.[2]  (Doc. 39, at 20, ¶ 40.)  On December 14, 2006, he slipped and fell in the shower area of F-Block when the strap on one of his shower shoes snapped in an overcrowded shower area causing him neck, back, head and shoulder injuries.

Carpenter pursues seven causes of action as a result of this incident and the events that transpired thereafter.  In his first cause of action, he asserts that all defendants have failed to provide him the protection he is due under the Americans with  Disabilities Act "ADA").  (Doc. 39, at 27, ¶¶ 93-98.)  Specifically, he alleges that there are no slip guards, or handrails present in the shower area of F-Block that could have prevented or mitigated his injury.  (Id. at ¶ 95.)

He next asserts that the policies and practices of defendants constitute cruel and unusual punishment in violation of the Institutionalized Persons Act found at 42 U.S.C. § 2000dd.  (Id. at 28, ¶ 100.)

---

[2]Keefe Group Incorporated was dismissed from this action on March 10, 2010.  (Doc. 98.)

The third cause of action is an Eighth Amendment claim alleging that the prison conditions constitute cruel and unusual punishment, lodged against defendants Rendell, Beard, Demming, Kneiss, Wynder, Mooney, McGrady and Miller as follows:

> Plaintiff, during his time of being housed in SCI Dallas has watched the gradual deterioration of conditions to the point where he has been housed in a cell for numerous winters with no heat, breakdowns in hot water, feces backing up into the cells from adjacent cells because of inadequate plumbing systems to accommodate the overpopulation of SCI Dallas. Plaintiff has observed inmates dying in cells because there were no emergency call buttons to contact officers, and plaintiff himself has had to wake up from seizures where he could not get help because the guards [sic] office was too far away for him to yell.
>
> Plaintiff has been exposed to numerous instances of disease outbreaks where entire blocks within SCI Dallas had to be quarantined because of various outbreaks of highly contagious diseases, and had to get water out of trash cans for days because of break downs in the plumbing systems due to overcrowding.

(Id. at 1-2, ¶1.) He contends that "the wholesale warehousing of prisoners has created egregious hazards that are detrimental to the safety and well being of the plaintiff on a daily basis and are the direct result of the negligible action on the part of all defendants named." (Id. at 28, ¶ 102.

He also is pursing an Eighth Amendment claim of deliberate indifference to his medical needs following his fall in the shower. (Id. at 20-22, ¶¶ 42-62.) He alleges the following:

> Plaintiff has been denied competent medical treatment for the injuries he has sustained wherein the defendants never even actually gave him a physical examination after the injuries he sustained. Plaintiff was not put under observation after sustaining head, neck, and back injuries. He was given nothing for pain management after staff were repeatedly told that

the pharmacy of the institution did not have any of his already prescribed
medications. Therefore, plaintiff was left to lay in a cell in pain for three
days, with no pain management medication, without heat in his cell in
freezing temperatures, with no call button to call for help in case of major
complications or the onset of a seizure for which he was being treated
prior to sustaining the injuries claimed.

When the plaintiff reported to sick call on the following day of sustaining
injuries during his fall in the overcrowded shower area, staff specifically
stated, "Oh, you're okay. You're not hurt so stop taking up my time!". .
. . Then, to make matter worse, the Physician's Assistant denied him
permission to see a doctor and merely ordered X-Rays of the "wrong"
area of his body. An area he knew that the plaintiff had not sustained
injuries in order to be vindictive.

The medical staff didn't even review his files at any time to see that the
plaintiff had previously been being treated because of two injures he had
sustained to his head.

(Doc. 39, at 2-3, ¶ 2.) He specifically states that defendant Bezdziecki, or "Nurse

Irene," denied him access to competent medical care in that he repeatedly told her

that he was in pain and that he did not have pain medication available to him.

(Doc. 39, at 13, ¶ 22.) He alleges that she "failed to give [him] a physical

examination, did no initial testing, and told [him] there was nothing wrong with

him." (Id.) He also alleges that defendant Fogel, as the person responsible for

overseeing all medical care provided by Prison Health Care Industries, allowed

substandard care to be administered to inmates. (Id. at 11, ¶ 15.) Defendants

Ginnochetti and Leskowski acquiesced in the denial of medical care by failing to

rectify the situation *via* the grievance review process. (Id. at 12, ¶¶ 17-18.)

Causes of action four and five raise Fourteenth Amendment equal protection and due process claims and First Amendment retaliation claims, respectively. (Id. at 29, ¶¶ 103-06.) The allegations in support of these claims are as set forth below:

> Defendants have also engaged in retaliatory actions by threatening the plaintiff and falsifying misconduct charges to impede the plaintiff's efforts to raise the claims set forth above, and by taking the plaintiff's single cell status and housing him with other inmates in a cell that was never built to house two people in furtherance of their retaliation of the plaintiff for pursuing the above claims. Plaintiff was denied due process in the taking of a single cell status he has had for over twenty years solely on the basis of retaliation and to further the cruel and unusual hazards engendered in the current prison overcrowding that resulted in plaintiff's injuries. Plaintiff was further denied equal protection where he was not granted a meaningful review in accordance with the policies set forth by the DOC. Instead the plaintiff was told by the psychology staff (defendant Dr. Jesse) that they were not reviewing his record because they could not find them and because they had too many cases to waste time even looking for them, and when the plaintiff expressed his concern for his safety because he had already been raped once, was cruelly told, "we have a don't ask don't tell policy in regard to rape", by a psych deparptment [sic] staff member who interviewed him "after" his single cell had already been taken in violation of DOC Policy.

> When plaintiff began to file complaints about this matter he was mysteriously issued a misconduct that he was never issued, and called to a hearing on it before defendant Gaylen Miller (F-Block Unit Manager) and told that he was guilty because he said so and because he liked to run his mouth and get guys to help him file paperwork. Plaintiff was never given notice, had documents falsified to intimidate him by claiming that plaintiff plead guilty when he did not and was done an [sic] retaliation for his redress of grievances regarding violations of his civil rights.

(Doc. 39, at 6-7, ¶ 2.) He avers that his single cell status was revoked due to the actions or inactions of defendants Miller and Miskell. (Id. at 16, ¶¶ 24, 31) He further asserts that defendants Burks, Varner, Lucas, Wynder and Kloptoski failed

to investigate and act upon information in grievances concerning the revocation of his single cell status.

In the sixth cause of action, entitled "Commercial Trade Violations", he seeks to impose liability on defendants based on the sale of defective shower shoes. (Doc. 39, at 30-31, ¶ 108.)  He alleges that despite numerous complaints, defendants continued to sell the items with total disregard for the health and well being of the rights of individuals to be free from hazardous materials and materials that contain defects.  (Id. at 31, ¶ 108.)  He specifically alleges that defendant Goldberg had a duty to ensure that all products sold were compliant with Federal Trade Commission Guidelines.

The seventh cause of action contains a RICO claim based on what Carpenter describes as a "monopoly in trade . . . created . . . *via* policies of government entities limiting trade to exclusive parties in violation of commercial law, Constitutional Law and 42 U.S.C. § 1983." ((Doc. 39, at 30, ¶ 109.)

**II.**     **Standard of Review**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).  Although the court is

generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The plaintiff must present facts that, if true, demonstrate a plausible right to relief. See FED. R. CIV. P. 8(a) (stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); Ashcroft v. Iqbal, ---U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (explaining that Rule 8 requires more than "an unadorned, the-defendant unlawfully-harmed-me accusation"); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). Thus, courts should not dismiss a complaint for failure to state a claim if it contains "enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556).

Courts are cautioned that because of this liberal pleading standard, a plaintiff should generally be granted leave to amend before dismissing a claim that is merely deficient.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).  The federal rules allow for liberal amendments in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits."  Foman v. Davis, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted).  However, leave to amend under Rule 15 may be denied in cases of (1) undue delay; (2) bad faith or dilatory motive; (3) undue prejudice; or (4) futility of amendment.  See Foman, 371 U.S. at 182;  see also Arthur v. Maersk, Inc., 434 F.3d 196, 204-05 (3d Cir. 2006) (stating that "leave to amend must generally be granted unless equitable considerations render it otherwise unjust"); see also Long v. Wilson, 393 F.3d 390, 400 (3d Cir. 2004) (stating "absent undue or substantial prejudice, an amendment should be allowed under Rule 15(a) unless denial can be grounded in bad faith or dilatory motive, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed or futility of amendment") (citations and internal quotation marks omitted); Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir.  2000) (summarizing factors to consider under Rule 15).

**III.**   **Discussion**

   **A.**   **Americans With Disabilities Act**

   Title II of the  Americans With Disabilities Act ("ADA") provides that "no qualified individual with a disability shall, by reason of such disability, be excluded

from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. As used in Title II of the ADA, "public entity" is defined as: "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority (as defined in section 103(8) of the Rail Passenger Service Act [49 U.S.C.S. § 24102(4) ] )." 42 U.S.C. § 12131(a). State prisons fall squarely within the statutory definition of "public entity" in Title II of the ADA. Pennsylvania Dep't of Corrections v. Yeskey, 524 U.S. 206, 210 (1998).

Defendants make reference to Department of Corrections' Policy Statement DC-ADM 006, "Reasonable Accommodations for Inmates with Disabilities," which allows a disabled inmate to request accommodation by submitting an Inmate Accommodation Request Form to the facility's Corrections Healthcare Administrator. (Doc. 83, at 9.) They argue that because Carpenter has not produced any evidence that he requested an accommodation, he cannot now invoke the protections of the ADA. (Id. at 10.) Conversely, plaintiff states that he submitted a request for accommodation under the ADA but defendants never processed the request. Clearly this is an issue that is more appropriately disposed of at the summary judgment stage. Therefore, the ADA claim will proceed.

**B.      42 U.S.C.A. § 2000dd**

Carpenter also attempts to advance a claim under the "Institutionalized Person Protection Act" at 42 U.S.C.A. § 2000dd.  (Doc. 39, at 28.)  There exists no such act.  However, the Detainee Treatment Act of 2005, Pub.L. 109-148, § 1003(a), 119 Stat. 2739, is codified at 42 U.S.C.A. § 2000dd, and governs the prohibition on cruel, inhuman, or degrading treatment or punishment of persons under custody or control of the United States Government.  42 U.S.C.A. § 2000dd (stating that "[n]o individual in the custody or under the physical control of the United States Government, regardless of nationality or physical location, shall be subject to cruel, inhuman, or degrading treatment or punishment.")  Clearly, this act does not apply to the matter *sub judice* as Carpenter is not in the custody or control of the United States government.

**C.      42 U.S.C. § 1983**

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials.  See 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). Merely private conduct, no matter how discriminatory or wrongful is excluded from the reach of § 1983. Blum v. Yaretsky, 457 U.S. 991, 1002 (1982)).

Additionally, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988); see also, Rizzo v. Goode, 423 U.S. 362 (1976); Atkinson v. Taylor, 316 F.3d 257 (3d Cir. 2003). Thus, individual liability can be imposed under Section 1983 only if the state actor played an "affirmative part" in the alleged misconduct. Rode, *supra*. Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. Rode, 845 F.2d at 1208.

1. Eighth Amendment

a. *Conditions of Confinement*

The Eighth Amendment does not mandate that prisons be free of discomfort. Hudson v. McMillian, 503 U.S. 1, 9 (1992). Rather, a prisoner must show that he has been deprived of "the minimal civilized measure of life's necessities, such as food,

clothing, shelter, sanitation, medical care, or personal safety." <u>Farmer v. Brennan</u>, 511 U.S. 825, 832, 834 (1994) (citations omitted). To violate the Eighth Amendment, conditions of confinement must be dangerous, intolerable or shockingly substandard. <u>Riley v. Jeffes</u>, 777 F.2d 143, 147 (3d Cir. 1985); <u>Inmates of Allegheny Cnty. Jail v. Pierce</u>, 612 F.2d 754, 757 (3d Cir. 1979).

An Eighth Amendment violation occurs when the prison official is deliberately indifferent to inmate health or safety and when this act or omission results in the denial of "the minimal civilized measure of life's necessities." <u>See Farmer</u>, 511 U.S. at 832 (1994). Therefore, a prison official can be held liable under the Eighth Amendment for denying humane conditions of confinement if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. <u>See id.</u> at 847, 114 S.Ct. 1970. Claims of negligence, without a more culpable state of mind, do not constitute "deliberate indifference." <u>See</u> <u>Singletary v. Pennsylvania Dept. Of Corrections</u>, 266 F.3d 186, 193 n. 2 (3d Cir. 2001).

Carpenter attempts to advance a slip and fall claim as an Eighth Amendment claim of deliberate indifference to his safety. The allegations contained in the amended complaint fall well short. At no point does Carpenter allege that the circumstances surrounding his slip and fall resulted in a denial of the minimal civilized measure of life's necessities. At most, the allegations amount to negligence, breach of contract, and product liability claims and are not actionable

under § 1983. Consequently, the Eighth Amendment conditions of confinement claim, as it relates to the slip and fall, will be dismissed as to all moving defendants.

Carpenter alleges that defendants Wynder, Mooney, McGrady, Miller, Rendell, Beard, Demming and Kneiss are responsible for subjecting him to numerous other objectionable conditions of confinement, including, *inter alia*, exposure to disease, an unheated cell, lack of hot water, and inadequate plumbing which led to a lack of drinking water and sewer back-ups. Specifically, he alleges that defendant Wynder, as Superintendent, failed in his responsibility of ensuring that SCI-Dallas met all safety needs of those in his care and "is directly responsible because he personally knew for years, cells on F-Block where the plaintiff was housed had no heat, broken plumbing that was repeatedly shut down, feces backing up into the toilets due to over population, and insufficient showering facilities for the number of inmates on that block that directly resulted in the plaintiff's injuries." ( Id. at 14-15, ¶ 25.) Defendants Mooney and McGrady, as deputy superintendents, personally engaged in and sanctioned confining plaintiff in a hazardous environment and were personally responsible for the running of "an overcrowded prison whose human rights violations were known and systematic." (Id. at 15-16, ¶¶ 27-28.) Carpenter alleges that defendant Miller, the unit manager of F-Block, ignored his numerous complaints regarding poor housing conditions. (Id. at 16-17, ¶ 31.) These allegations are sufficient to state a claim against these defendants and will proceed.

However, defendants Rendell, Beard, Demming and Kneiss are named in their capacities as supervisory officials. (Doc. 39, at 16, ¶¶ 29-30.) To maintain a claim for supervisory liability, plaintiff "must show: 1) that the supervising official personally participated in the activity; 2) that the supervising official directed others to violate a person's rights; or 3) that the supervising official had knowledge of and acquiesced in a subordinate's violations." Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995). He alleges that defendant Rendell, who at the time served as Governor of Pennsylvania, ignored his letter regarding the hazardous conditions of confinement. (Id. at 9, ¶ 9.) Defendant Beard, who is responsible for "housing all inmates in a safe and secure environment as well as his being personally responsible for ensuring that the basic need of those in his custody are provided for . . . ," allegedly "wilfully and unreasonably" ignored his right to be free from cruel and unusual punishment. (Id. at 9-10, ¶ 10.) He contends that defendants Demming and Kneiss, in their capacities as supervisors, had a responsibility to rectify the hazardous conditions. (Id. at 16, ¶¶ 29-30.) The allegations against these defendants are general and conclusory and do not satisfy the requirements that these supervising officials personally participated in the activity, directed others to violate Carpenter's rights, or had knowledge of and acquiesced in a subordinate's violations. Further, given the solely supervisory roles of these defendants, it is clear

14

that allowing an amendment would be futile.[3]  Consequently, this claim will be

dismissed against defendants Rendell, Beard, Demming and Kneiss.

> b.    *Medical*

To demonstrate a prima facie case of Eighth Amendment cruel and unusual

punishment based on the denial of medical care, plaintiff must establish that

defendants acted with deliberate indifference to his serious medical needs.  Estelle

v. Gamble, 429 U.S. 97, 104 (1976); Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir.

1993).  There are two components to this standard:  First, a plaintiff must make an

"objective" showing that the deprivation was "sufficiently serious," or that the

result of the defendant's denial was sufficiently serious.  Additionally, the plaintiff

must make a "subjective" showing that defendant acted with "a sufficiently

culpable state of mind."  Wilson v. Seiter, 501 U.S. 294, 298 (1991); see also

Montgomery v. Pinchak, 294 F.3d 492, 499 (3d Cir. 2002).  The "deliberate

indifference to serious medical needs" standard is obviously met when pain is

intentionally inflicted on a prisoner, when the denial of reasonable requests for

medical treatment exposes the inmate to undue suffering or the threat of tangible

residual injury, or when, despite a clear need for medical care, there is an

intentional refusal to provide that care.  See Spruill v. Gillis, 372 F.3d 218, 235 (3d

---

[3]Significantly, the conditions of confinement claim is proceeding against those defendants that may have been personally involved in the alleged constitutional deprivations.

Cir. 2004) (quoting <u>White v. Napoleon</u>, 897 F.2d 103, 109 (1990); <u>Monmouth County</u>

<u>Corr. Inst. Inmates v. Lensario</u>, 834 F.2d 326, 346 (3d Cir. 1987).

Defendant Fogel is allegedly responsible for overseeing all medical care by

Prison Health Care Industries and has "participated in the common practice of

allowing substandard care to be administered to those prisoners in his care. . . ."

(Doc. 39, at 11, ¶ 15.)  As noted in section C(1)(a), *supra*, to maintain a claim for

supervisory liability, Carpenter must allege that the supervising official personally

participated in the activity, directed others to violate a person's rights, or had

knowledge of and acquiesced in a subordinate's violations.  Fogel is sued in his

capacity as a supervisor and there is nothing in the complaint that indicates that

Fogel personally participated in the alleged denial of medical care.  Consequently

the Eighth Amendment medical claim against him will be dismissed and Carpenter

will not be afforded leave to amend because the allegations are based on his

"practice of allowing substandard care to be administered to prisoners" rather than

any direct involvement in Carpenter's medical care.[4]

Defendant Ginnochetti is named in his capacity as the "Health Care

Administrator overseeing all medical care provided at SCI Dallas."  (<u>Id.</u> at 12, ¶ 17.)

Defendant Leskowski is "the head of nursing staff, responsible for overseeing

Health Care Administration after defendant Ginnochetti." (<u>Id.</u> at ¶ 18.)  It is alleged

that each of these defendants reviewed grievances and that in failing to investigate

---

[4]Notably, the denial of adequate medical treatment is proceeding against
defendants Bohinski, Wisniewski, and Bezdziecki.

16

the claims of inadequate medical care, and to rectify the situation, defendants "denied [Carpenter's] constitutional rights by acquiescence to those deprivations." (Id.) Participation in the after-the-fact review of a grievance or appeal is not enough to establish personal involvement. See Rode, 845 F.2d at 1208 (mere filing of a grievance is not enough to impute the actual knowledge necessary for personal involvement); Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006) (holding that a state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance, did not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct); Croom v. Wagner, 2006 WL 2619794, at *4 (E.D. Pa. Sept. 11, 2006) (holding that neither the filing of a grievance nor an appeal of a grievance is sufficient to impose knowledge of any wrongdoing); Ramos v. Pennsylvania Dept. of Corrections, 2006 WL 2129148, at *2 (M.D. Pa. July 27, 2006) (holding that the review and denial of the grievances and subsequent administrative appeal does not establish personal involvement); Pressley v. Blaine, No. 01-2468, 2006 U.S. Dist. LEXIS 30151, at *17 (W.D. Pa. May 17, 2006) ("[M]ere concurrence in a prison administrative appeal process does not implicate a constitutional concern." (citing Garfield v. Davis, 566 F. Supp. 1069, 1074 (E.D. Pa. 1983)). Beyond bald assertions, Carpenter has failed to sufficiently allege that these defendants were personally involved in conduct amounting to a constitutional violation. This claim against defendants Ginnochetti and Leskowski will be

dismissed.  Since Carpenter is unable to cure the deficiencies with respect to this claim, allowing an amendment would be futile.

Conversely, Carpenter alleges that following his fall, defendant Bezdziecki or "Nurse Irene,"  denied him access to adequate medical care in that she failed to provide him with pain medication, did not perform a physical examination, and did no initial testing.  Such allegations are sufficient to permit the Eighth Amendment claim to proceed against this defendant.

2.    Fourteenth Amendment

a.    *Equal Protection*

 "The Equal Protection Clause commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws.'"  Vacco v. Quill, 521 U.S. 793, 799 (1997); U.S. Const. amend. XIV, § 1.  This is not a command that all persons be treated alike, but, rather, a direction that all persons similarly situated be treated alike.  See City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985).   "The central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race," Whren v. United States, 517 U.S. 806, 813 (1996), or any other suspect classification.  See Bakke v. California Bd. of Regents, 438 U.S. 265, 291 (1978) ("the guarantee of equal protection cannot mean one thing when applied to one individual and something else when applied to a person of another color" and "racial and ethnic distinctions of any sort are inherently suspect and thus call for the most exacting judicial examination").

Instantly, plaintiff's complaint is devoid of any allegations that he was treated differently from those who were similarly situated to him. Consequently, his equal protection claim will be dismissed. No leave to amend will be granted as it would be futile.

b.  *Due Process*

i.  Single Cell

Prison conditions do not impact a protected liberty interest unless they result in an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472 483(1995). "[L]iving in a double-cell is an expected ordinary incident of prison life, [ and] retaining single-cell status is not a protected liberty interest." Austin v. Chesney, No. 93-4010, 1995 WL 498720, at *3 (E.D. Pa., Aug. 22, 1995.) Carpenter, therefore, has no Fourteenth Amendment right to be housed in a single cell and his right to due process is not offended by any decision to place him in a cell with another inmate. Allowing any amendment to this claim would clearly be futile. Consequently, the claims against defendants Miskell and Miller relating to single cell status will be dismissed.

ii.  Grievance Procedure

It is first noted that defendants' alleged obstruction of prison grievance procedures does not give rise to an independent claim. Prisoners do not have a constitutional right to prison grievance procedures. See, e.g., Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (collecting cases). Further, Carpenter's claims that

defendants Burks, Varner, Lucas, Wynder, and Klopotoski violated his due process rights in failing to rectify matters through the grievance procedure are subject to dismissal based on a lack of personal involvement in conduct amounting to a constitutional violation. (Doc. 39, at 10, ¶¶ 11-13; at 12, ¶¶17, 18; at 14, ¶ 25; at 39, ¶ 26; at 22-23, ¶¶ 63-68, 83, 84.) As noted in section C(1)(b), *supra*, participation in the after-the-fact review of a grievance or appeal is not enough to establish personal involvement. See Rode, 845 F.2d at 1208 (mere filing of a grievance is not enough to impute the actual knowledge necessary for personal involvement). Therefore, any due process claims against defendants Burks, Varner, Lucas, Wynder, and Klopotoski, arising out of their roles in the review of grievances will be dismissed. As Carpenter is unable to cure the deficiencies associated with this claim, allowing an amendment would be futile.

      3.    <u>First Amendment</u>

Carpenter alleges that he was retaliated against in violation of the First Amendment. The First Amendment offers protection for a wide variety of expressive activities. See U.S. Const. amend I. Defendants make no reference to this claim in their motion to dismiss. The claim will proceed against all defendants.

**D.    Commercial Trade Violations**

Carpenter also seeks to hold defendants liable based on the sale of "defective items, improperly labeled, and advertised while knowing that these items presented a health hazard to plaintiff." (Doc. 39, at 30, ¶ 108). The court declines to exercise supplemental jurisdiction over these pendent state law claims. 28 U.S.C. §

1367(c)(3).  The claims will be dismissed without prejudice to any right plaintiff may have to pursue them in state court.  In so holding, the court expresses no opinion as to the merits of any such claims.

To the extent that any cause of action is alleged under the rubric of a Federal Trade Commission Act claim, 15 U.S.C. § 45, the Federal Trade Commission Act regulations do not create private rights, <u>Zhang v. Southeastern Financial Group, Inc.</u>, 980 F. Supp. 787 (E.D.Pa. 1997), and there is no private right of action under the statute.  Federal Trade Commission Act, § 5(a), 15 U.S.C.A. § 45(a).  <u>Martino v. Everhome Mortg.</u>, 639 F. Supp.2d 484 (D.N.J. 2009); <u>see also</u>, <u>Skypala v. Mortgage Electronic Registration Sys. Inc.</u>, No. 08-5867, 2009 WL 2762247, at *1 n. 1 (D.N.J. Sept. 1, 2009) (collecting cases).  Rather, the statute contains an exclusive administrative enforcement mechanism vested only in the Federal Trade Commission.  <u>Wisniewski v. Rodale, Inc.</u>, 510 F.3d 294, 304 (3d Cir. 2007).  This cause of action will be dismissed.

## E.    RICO Violations

Carpenter attempts to advance a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO" or "the Act"), 18 U.S.C. §§ 1961-1968.  RICO prohibits "any person . . . associated with any enterprise engaged in . . . interstate or foreign commerce [from] conduct[ing] or participat[ing], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c).  The Act authorizes "any person injured in business or property by reason of a violation of 18 U.S.C. § 1962" to enforce RICO through private suits

for money damages. 18 U.S.C. § 1964(c). Consequently, a plaintiff seeking recovery under RICO must satisfy the standing requirement of injury to property or business as a proximate result of the alleged pattern of racketeering activity. Sedima, S.P.R.L., v. Imrex Company, Inc., 473 U.S. 479 (1985) (finding that a plaintiff "only has standing if, and can only recover to the extent that, he has been injured in his business and property by the conduct constituting the [RICO] violation."); see Maio v. Aetna, Inc., 221 F.3d 472, 482 (3d Cir. 2000) (considering standing in the context of whether appellants have alleged a valid RICO injury to business or property); see also Brokerage Concepts, Inc. v. U.S. Healthcare, Inc., 140 F.3d 494, 520 (3d Cir. 1998) (pointing to section 1964(c) as the "standing requirement" for RICO suits). The Third Circuit has read section 1964(c) "as requiring two distinct threshold showings: (1) that the plaintiff suffered an injury to business or property; and (2) that the plaintiff's injury was proximately caused by the defendant's violation of 18 U.S.C. § 1962." Maio, 221 F.3d at 483. Personal injuries, loss of earnings, and other indirect injuries do not confer standing under RICO. See Anderson v. Ayling, 396 F.3d 265, 270-71 (3d Cir.2005) (upholding dismissal of the plaintiffs' RICO claims because the complaint failed to allege a direct, causal link between the plaintiff's loss of employment and the alleged racketeering activity); Genty v. Resolution Trust Corp., 937 F.2d 899, 918-19 (3d Cir. 1991) (concluding that personal injuries cannot confer standing under RICO). Carpenter lacks standing to bring a RICO claim because he fails to meet the threshold requirement of injury to business or property. The RICO claim will be dismissed.

**IV.**   **Conclusion**

Based on the foregoing, defendants' motion to dismiss plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 78) will be granted in part and denied in part.

An appropriate order will issue.


   S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge


Dated:        March 17, 2011

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PHILIP CARPENTER,** | : | **CIVIL ACTION NO. 1:08-CV-2233** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **SUPERINTENDENT KLOPTOSKI,** | : | |
| **et al.,** | : | |
| | : | |
| **Defendants** | : | |

## <u>ORDER</u>

AND NOW, this  day of 17th day of March,  2011, upon consideration of defendants' motions to dismiss plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 78), and in accordance with the foregoing memorandum, it is hereby ORDERED that:

1. Defendants'  motion to dismiss (Doc. 78) is granted in part and denied in part.

2. The motion is DENIED with respect to the following:

    a. The Americans With Disabilities Act claim.

    b. The First Amendment retaliation claim.

    c. The Eighth  Amendment claim of denial of adequate medical treatment against defendant "Nurse Irene" Bezdziecki.

    d. The Eighth Amendment conditions of confinement claim against defendants Wynder, Mooney, McGrady, and Miller.

3. Defendants shall file an Answer to these claims on or before March 31, 2011.

4.    The motion is GRANTED as follows:

a.    The 42 U.S.C.A. § 2000dd claim is DISMISSED in its entirety.

b.    The Eighth Amendment conditions of confinement claim as it relates to the slip and fall is DISMISSED in its entirety.

c.    The Eighth Amendment claim of denial of medical care is DISMISSED against all moving defendants except defendant "Nurse Irene" Bezdziecki.  (See 2(c), *supra*)

d.    The Eighth Amendment conditions of confinement claim directly relating to the prison conditions is DISMISSED against all moving defendants except Wynder, Mooney, McGrady and Miller.  (See 2(d), *supra*.)

e.    The Fourteenth Amendment equal protection and due process claims are DISMISSED in their entirety.

f.    The Commercial Trade Violations claim is DISMISSED in its entirety.

g.    The RICO claim is DISMISSED in its entirety.


 S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge