# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PHILIP CARPENTER**, | : CIVIL ACTION NO. 1:08-CV-2233 |
| Plaintiff | : (Judge Conner) |
| v. | : |
| **SUPERINTENDENT KLOPTOSKI**, et al., | : |
| Defendants | : |

## **MEMORANDUM**

Plaintiff Philip Carpenter ("Carpenter"), a state inmate incarcerated at the State Correctional Institution at Dallas, Pennsylvania ("SCI-Dallas"), commenced this civil action on December 15, 2008. The matter is presently proceeding *via* an amended complaint filed on July 22, 2009. (Doc. 39.) Ripe for disposition is the motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, filed on behalf defendants Donald O'Brien, Physician's Assistant ("PA O'Brien" or "O'Brien"), Stanley Bohinski, Doctor of Osteopathic Medicine. ("D.O. Bohinski or "Bohinski"), and Cheryl Wisniewski Bunk, Physician's Assistant ("PA Wisniewski" or "Wisniewski"). (Doc. 166.) For the reasons set forth below, the motion will be granted.

## I.   **Standard of Review**

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact" and for which a jury trial would be an empty and unnecessary formality. See FED. R. CIV. P. 56(c). The

burden of proof is upon the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(c), (e). Only if this threshold is met may the cause of action proceed. Pappas, 331 F. Supp. 2d at 315.

The pertinent portions of the Middle District of Pennsylvania Local Rules of Court, which are set forth in the Standing Practice Order served upon plaintiff on December 15, 2008 (Doc. 7), provide that, in addition to filing a brief in response to the moving party's brief in support, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] . . . , as to which it is contended that there exists a genuine issue to be tried." See M.D. Pa. LR 56. 1. The rule further states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party. See id. Although Carpenter submitted a statement of facts (Doc. 178), the statement is not in compliance with the Local Rules of Court. Specifically, he failed to include a separate, short and concise statement of material

facts responding to the numbered paragraphs set forth in the statement of material facts filed by defendant. Carpenter filed a nine-page statement of facts containing thirty-five paragraphs which, beyond the procedural history set forth at the beginning of the statement, does not correspond in any manner with the 124 paragraphs of facts set forth in defendant's statement and are, in part, irrelevant to the claims against defendants. (Docs. 173, 178.) Therefore, to the extent that plaintiff has failed to controvert material facts contained in defendants' statement (Doc. 173), they will be deemed admitted.

## II.     Statement of Material Facts

Carpenter has been incarcerated at SCI-Dallas, and housed on F-Block for the past twenty-five years. (Doc. 39, at 1.) On December 14, 2006, a loose velcro strap on plaintiff's shower shoe caused him to fall in the shower and hit his head, left shoulder and ribs. (Doc. 173, ¶¶ 12, 43; Doc. 178, ¶ 13.) He did not lose consciousness. (Doc. 173, ¶¶ 12, 45.) He was taken by wheelchair to the medical department and examined by Nurse Irene. (Doc. 173, ¶¶ 12, 44; Doc. 178, ¶ 17.) He had a hematoma on the left side of his head, but no vision problems. (Doc. 173, ¶ 12.) He was thoroughly examined and rated his pain as a three or four on a scale of one to ten. (Id.) He was advised to return to sick call the next morning. (Id. at ¶¶ 12, 46)

The following day, Carpenter was seen by physician's assistant, Lynn A. Maguschak ("PA Maguschak").[1] (Doc. 173, ¶ 13.) It was noted that Carpenter was ambulating slowly. (Id.) Although he was neurologically intact, he had some mild edema in his left temporal area. (Id.) He had no swelling or bruising to his left ribs, but experienced pain on palpation. (Id.) PA Maguschak ordered x-rays with particular attention to the left rib area. (Id.) It was also noted that Carpenter had pre-existing orders for pain medication and that he should take the pain medication. (Id. at ¶¶ 13-15.)

On December 18, 2006, he underwent x-rays of his chest with attention to his left ribs. (Doc. 173, ¶¶ 16, 86.) The x-rays were normal. (Id. at ¶¶ 16, 59)

On December 21, 2006, Carpenter reported to sick call in moderate distress due to persistent pain in his left rib area. (Doc. 173, ¶¶ 17, 58.) Defendant PA O'Brien, a physician's assistant licensed to practice in the Commonwealth of Pennsylvania, employed by Prison Health Care Industries, examined him and noted bruising and tenderness in the area of the eighth and ninth ribs, but detected no deformity. (Id. at ¶¶ 17, 83, 87) PA O'Brien told him to use his prescribed medication for pain management and ordered additional x-rays of the ribs. (Id. at ¶¶ 17, 88) He had no involvement in the distribution of medication to Carpenter; this function is reserved for the nurses. (Id. at ¶ 90.)

---

[1] Carpenter mistakenly believed that he was seen on this date by defendant PA Wisniewski. (Doc. 178, at ¶ 22.) He now recognizes he was seen by PA Maguschak. (Id.)

4

Between December 21, 2006, and January 2, 2007, Carpenter underwent additional x-rays of his chest and left ribs.  (Doc. 173, at ¶¶ 18, 92)  The x-rays were read by Dr. Dovydaitis on January 3, 2007.  (Id. ¶¶ 18, 91.)  They were negative for any type of fracture or break.  (Id. ¶¶ 18-91-92.)

On December 27, 2006, he returned to sick call complaining that he had been coughing for a few days and he still had rib pain.  (Id. at ¶ 19.)  PA O'Brien prescribed him Guaifenesin and told him to return if his symptoms persisted.[2]  (Id.)  On January 9, 2007, he presented with the same symptoms and complaints.  (Id. at ¶ 20.)  PA O'Brien continued the Guaifenesin prescription, added a prescription for Bactrim, and ordered another chest x-ray.[3]  (Id. at ¶¶ 20, 93.)  The chest x-ray was taken two days later and was negative.  (Id. at ¶¶ 21, 94.)

Carpenter's next interaction with PA O'Brien was on March 16, 2007, when he requested that his Tylenol #3 be reordered.  (Doc. 173, at ¶¶ 22, 64, 95.)  He saw PA O'Brien on three additional occasions: (1) he had left shoulder and neck pain on April 18, 2007; (2) on September 24, 2007, he requested a prescription refill; (3) he had sinus complaints on October 10, 2007.  (Id. at ¶¶ 25, 27-28, 97.)

---

[2]Guaifenesin is an expectorant that helps loosen congestion in the chest and throat.  http://www.drugs.com/guaifenesin.html

[3]Bacrtim is a prescription drug used to treat infections. http://www.drugs.com/search.php?searchterm=Bactrim

Defendant D.O. Bohinski first saw Carpenter for a pre-arranged appointment in the Infectious Disease Clinic on April 9, 2007. (Doc. 173, ¶¶ 24, 72.) This visit was for a chronic medical problem completely unrelated to the injuries sustained in the fall. (Id. at ¶ 74.) Carpenter did not inform defendant Bohinski that he was suffering from any pain or required medical attention. (Id. at ¶ 76.) Defendant Bohinski did not see Carpenter again in 2007. (Id. at ¶ 75.)

According to the medical chart, after January 9, 2007, Carpenter never again complained of rib pain. (Doc. 173, at ¶ 78.)

Defendant PA Wisniewski was employed by Prison Health Care Services at SCI-Dallas from 2001 to 2005. (Doc. 173, ¶ 111.) She was not involved in any of plaintiff's treatment related to the fall in the shower as she was not employed at SCI-Dallas during that time period. (Id. at ¶¶ 112-113.) She returned to SCI-Dallas in September 2007, and treated plaintiff for the first time in October 2007. (Id. at ¶ 113.) Hence, she did not examine Carpenter or consult in his care or treatment, or render any medical advice or opinion concerning his care or treatment from December 2006 to October 17, 2007. (Id. at ¶¶ 117-22.)

Inmates with complaints relating to their confinement are permitted to file grievances through the DOC's grievance system set forth at DC-ADM 804. (Doc. 172-10, at 1-19.) Under the policy that existed during the time relevant to plaintiff's issues, inmates were required to submit a grievance within fifteen working days of the event(s) on which the grievance was based and identify any individual who may have information that could be helpful in resolving the grievance, to state any

6

claims concerning violations, and request relief, including monetary relief. (Id. at 6.) Inmates who were dissatisfied with the initial review decision were permitted to appeal to the Facility Manager or Superintendent within ten working days of the date of the initial review decision. (Id. at 8.) An appeal to final review could be sought by filing an appeal through the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") within fifteen working days of the date of the Facility Manager's decision. (Id. at 10.)

On January 4, 2001, Carpenter filed Grievance 174511 concerning the medical care he received immediately following his fall in the shower. (Doc. 173, ¶ 67.) He makes general references to medical staff and specifically names defendant PA O'Brien. (Id. at ¶ 68.) The grievance was appealed to final review. (Doc. 172-5, at 2.)

### III. Discussion

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. See 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

### A.     Defendants D.O. Bohinski and PA Wisniewski

These defendants move for summary judgment on the ground that Carpenter did not include their names in Grievance 174511 concerning the medical care he received immediately following his fall in the shower. (Doc. 172, at 11-13.) Under the Prison Litigation Reform Act of 1996 (the "PLRA"), a prisoner is required to pursue all avenues of relief available within the prison's grievance system before bringing a federal civil rights action concerning prison conditions. See 42 U.S.C. § 1997e(a); Booth v. Churner, 206 F.3d 289, 291(3d Cir. 2000). It has been made clear that the exhaustion requirement is mandatory. See Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007); see also Booth, 532 U.S. at 741 (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"); Nyhuis v. Reno, 204 F.3d 65, 67 (3d Cir. 2000) (same). This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

Review of the record reveals that, although Carpenter specifically named PA O'Brien in Grievance 174511, he failed to name defendants Bohinski and Wisniewski or refer to them in any manner. Consequently, these defendants are entitled to an entry of summary judgment based on Carpenter's failure to utilize the administrative review process.

Significantly, even if all avenues of review had been administratively exhausted, the claims against Bohinski and Wisniewski would still fail because neither defendant was involved in rendering Carpenter medical treatment following his fall in the shower. "A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988); see also, Rizzo v. Goode, 423 U.S. 362 (1976); Atkinson v. Taylor, 316 F.3d 257 (3d Cir. 2003). Thus, individual liability can be imposed under Section 1983 only if the state actor played an "affirmative part" in the alleged misconduct. Rode, *supra*. Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. Rode, 845 F.2d at 1208.

Carpenter was not seen by defendant Bohinski until April 9, 2007, months after the fall. Even then, he was seen in the Infectious Disease Clinic for a chronic medical problem completely unrelated to the injuries sustained in the fall. Likewise, defendant Wisniewski did not treat Carpenter for fall-related injuries as

she was not even employed at SCI-Dallas at the time. The first time she saw him for a medical complaint was in October 2007, some ten months after the fall. It is clear from the record that neither defendant played an affirmative part in the treatment of Carpenter's fall-related injuries.

He also seeks to impose liability on defendant Bohinski based on his role as the "head doctor" who is contracted to oversee all medical treatment of inmates. Significantly, a civil rights claim cannot be premised on a theory of *respondeat superior*. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). To maintain a claim for supervisory liability, plaintiff "must show: 1) that the supervising official personally participated in the activity; 2) that the supervising official directed others to violate a person's rights; or 3) that the supervising official had knowledge of and acquiesced in a subordinate's violations." Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995). Carpenter simply offers unsupported arguments and allegations that defendant Bohinski, in his supervisory capacity, denied him adequate medical care. (Doc. 180, at 5-9.) Unsupported allegations are insufficient to establish personal involvement, and the record is devoid of evidence that Bohinski directed, had knowledge of, or acquiesced in the violations of plaintiff's rights. A party opposing summary judgment must come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas, 331 F. Supp. 2d at 315; FED. R. CIV. P. 56(e). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. See Anderson, 477 U.S. at

250-57; Matsushita, 475 U.S. at 587-89; see also FED. R. CIV. P. 56(c), (e).  Carpenter fails to meet his burden with respect to the claim against defendant Bohinski.

### B.     Defendant PA O'Brien

Defendant O'Brien concedes that Carpenter exhausted the issue of having to wait until December 28, 2006, for a second set of x-rays to be taken.  (Doc. 172, at 13.)  However, he seeks an entry of judgment on all other claims against him on the ground that they are unexhausted.  Exhaustion is satisfied by substantial compliance with the existing remedial scheme.  See Nyhuis, 204 F.3d at 77-78.  Plaintiff's grievance challenging the care provided by defendant PA O'Brien is sufficient to meet the exhaustion prerequisite to filing the claims he pursues against PA O'Brien.  Therefore, the merits of the claims will be considered.

PA O'Brien next argues that his conduct did not rise to the level of a constitutional violation.  (Doc. 172, at 14.)  To demonstrate a prima facie case of Eighth Amendment cruel and unusual punishment based on the denial of medical care, plaintiff must establish that defendants acted with deliberate indifference to his serious medical needs.  Estelle v. Gamble, 429 U.S. 97, 104 (1976); Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993).  There are two components to this standard:  First, a plaintiff must make an "objective" showing that the deprivation was "sufficiently serious," or that the result of the defendant's denial was sufficiently serious.  Additionally, the plaintiff must make a "subjective" showing that defendant acted with "a sufficiently culpable state of mind."  Wilson v. Seiter, 501 U.S. 294, 298 (1991); see also Montgomery v. Pinchak, 294 F.3d 492, 499 (3d Cir.

11

2002). The "deliberate indifference to serious medical needs" standard is obviously met when pain is intentionally inflicted on a prisoner, when the denial of reasonable requests for medical treatment exposes the inmate to undue suffering or the threat of tangible residual injury, or when, despite a clear need for medical care, there is an intentional refusal to provide that care. See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004) (quoting White v. Napoleon, 897 F.2d 103, 109 (1990); Monmouth County Corr. Inst. Inmates v. Lensario, 834 F.2d 326, 346 (3d Cir. 1987).

Significantly, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference, and "mere disagreements over medical judgment do not state Eighth Amendment claims." White, 897 F.2d at 110. "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . [which] remains a question of sound professional judgment." Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation. Estelle, 429 U.S. at 105-06; White, 897 F.3d at 110.

Based upon the evidence of record, it appears that Carpenter suffered from a serious medical condition. However, he fails to come forward with any evidence that PA O'Brien was deliberately indifferent to his condition. Each time PA O'Brien was confronted with Carpenter's medical complaints, his symptoms and complaints were evaluated, swiftly addressed and adequately treated. On

December 21, 2006, Carpenter was seen by PA O'Brien for persistent pain in his left rib area. After an examination, which revealed bruising and tenderness in the area of the eighth and ninth ribs, but detected no deformity, PA O'Brien ordered additional x-rays of the ribs and advised plaintiff to use his prescribed medication for pain management. On December 27, 2006, in response to plaintiff's complaints of a cough and rib pain, PA O'Brien prescribed him an expectorant and told him to return if his symptoms persisted. He returned with the same symptoms and complaints on January 9, 2007, and PA O'Brien continued the expectorant prescription, added an antibiotic prescription for infection, and ordered another chest x-ray. On March 16, 2007, and September 24, 2007, PA O'Brien fulfilled plaintiff's requests for prescription refills. O'Brien treated Carpenter for left shoulder and neck pain on April 18, 2007, and he addressed his sinus complaints on October 10, 2007.

It is clear that PA O'Brien provided Carpenter with more than adequate medical care relating to the injuries he sustained from his fall in the shower in December 2006, and complaints he presented with thereafter. Every medical complaint made by Carpenter was met with prompt and steady treatment. He was consistently examined and provided with appropriate medications and numerous x-rays. It is also clear from the record that if Carpenter experienced a delay in the distribution of his pain or prescription medications, no liability would fall on PA O'Brien as the nurses are responsible for the distribution of medication. At no time was Carpenter deprived of medical care. Rather, all indications are that he is

simply dissatisfied with the quality of the treatment.  This court will not second-guess the propriety or adequacy of a particular course of treatment as it is a question of sound professional judgment.  Defendant's motion for summary judgment will be granted with respect to this claim.

## IV. **Conclusion**

Based on the foregoing, defendants' motion for summary judgment (Doc. 166) will be granted.

An appropriate order will issue.

      S/ Christopher C. Conner
    CHRISTOPHER C. CONNER
    United States District Judge

Dated:       March 22, 2012

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PHILIP CARPENTER**, | : | CIVIL ACTION NO. 1:08-CV-2233 |
| **Plaintiff** | : | (Judge Conner) |
| v. | : | |
| **SUPERINTENDENT KLOPTOSKI**, et al., | : | |
| **Defendants** | : | |

## ORDER

AND NOW, this 22nd day of March, 2012, upon consideration of defendants' motion for summary judgment (Doc. 166) and in accordance with the foregoing memorandum, it is hereby ORDERED that:

1. Defendants' motion for summary judgment (Doc. 166) is GRANTED in favor of defendants O'Brien, Bohinski, and Wisniewski and against plaintiff.

2. Entry of judgment is DEFERRED pending final resolution of this matter.

3. The Clerk of Court is directed to NOTE on the docket that defendants O'Brien, Bohinski, and Wisniewski are terminated.

        S/ Christopher C. Conner  
        CHRISTOPHER C. CONNER  
        United States District Judge