# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PHILIP CARPENTER**, | : CIVIL ACTION NO. 1:08-CV-2233 |
| Plaintiff | : |
| | : (Judge Conner) |
| v. | : |
| | : |
| **SUPERINTENDENT KLOPTOSKI**, et al., | : |
| | : |
| Defendants | : |

## MEMORANDUM

Plaintiff Philip Carpenter ("Carpenter"), a state inmate incarcerated at the State Correctional Institution at Dallas, Pennsylvania ("SCI-Dallas"), commenced this civil action on December 15, 2008. The matter is presently proceeding *via* an amended complaint filed on July 22, 2009. (Doc. 39.) Ripe for disposition is the motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, filed on behalf of defendants Kloptoski, Irene Bezdziecki[1], Rendell, Beard, Burks, Varner, Lucas, Goldberg, Fogel, Ginnochetti, Leskowski, Miskell, Wynder, Mooney, McGrady, Demming, Kneiss and Miller. (Doc. 200.) Defendants seek entries of judgment on the following remaining claims: (a) the Americans with Disabilities Act claim; (b) the First Amendment retaliation claim; (c) the Eighth Amendment claim of denial of adequate medical treatment against defendant Irene; and (d) the Eighth Amendment conditions of confinement claim against Wynder, Mooney, McGrady

---

[1] Bezdziecki is identified in the amended complaint as "Nurse Irene." (Doc. 39.)

and Miller. (Doc. 215, at 3; Doc. 216, at ¶ 8; Doc. 231, at ¶ 8.) For the reasons set forth below, the motion will be granted with respect to the Eighth Amendment claim of denial of adequate medical treatment against defendant Bezdziecki. Defendants have failed to comply with Federal Rule of Civil Procedure 56(c) and Local Rule 56.1 with regard to the Americans with Disabilities Act claim, the First Amendment retaliation claim, and the Eighth Amendment conditions of confinement claim. Consequently, the motion will be stricken as to these claims and defendants will be afforded the opportunity to re-file a properly supported motion.

## I.     Standard of Review

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact" and for which a jury trial would be an empty and unnecessary formality. See FED. R. CIV. P. 56(c). The burden of proof is upon the nonmoving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the nonmoving party on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(c), (e). Only if this threshold is met may the cause of action proceed. Pappas, 331 F. Supp. 2d at 315.

Federal Rule of Civil Procedure 56(c) sets forth the requirements for supporting factual assertions contained in a motion for summary judgment. FED. R. CIV. P. 56(c). The pertinent portions of the Middle District of Pennsylvania Local Rules of Court provide that, "[a] motion pursuant to Fed.R.Civ.P. 56 shall be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." See M.D. Pa. LR 56. 1. Although defendants submitted a statement of facts (Doc. 216), the statement is not in compliance with either set of rules. Specifically, although defendants move on all remaining claims, the statement of material facts only includes facts related to the Eighth Amendment claim pending against defendant Bezdziecki.[2] Consequently, this is the only portion of the motion that will be considered. The remainder of the motion will be stricken without prejudice to defendants to re-file a properly supported motion within the time period set forth in the accompanying Order of Court.

## II. **Statement of Material Facts**

Plaintiff received medical treatment for injuries sustained in a fall in the shower at SCI-Dallas on December 14, 2006. (Doc. 216, ¶¶ 9-10; Doc. 231, at ¶ 9-10.) He reported to the medical department and was seen by defendant Bezdziecki at 10:50 p.m. (Id. at ¶¶ 10, 39 Id. at ¶¶ 10, 39.) He reported that he had fallen in the

---

[2]Although there is a section in the statement of facts dedicated to the Eighth Amendment conditions of confinement claim, it simply recites plaintiff's allegations from the amended complaint. (Doc. 216, at ¶¶ 102-09).

shower because the velcro strap on his shower shoe came loose causing him to fall and hit his head, left shoulder, and rib area.[3] (Id.) He had a hematoma on the left side of his head, but did not lose consciousness. (Id.) The medical records indicate that he was examined by defendant Bezdziecki who documented that he had no vision problems, did not suffer from nausea and did not experience vomiting. (Doc. 216, at ¶ 10.) His hand grips and the strength of his feet were checked and found to be equal and strong. (Id.) He rated his pain as a 3 or 4 on a scale of 1 to 10. (Id.) In citing to his deposition testimony, plaintiff disputes that defendant Bezdziecki examined him or performed any of the assessment tests. He also states that he suffered from nausea and rated his pain as a 4 on a scale of 1 to 5. (Doc. 231, at ¶ 10.) He was instructed to report for sick call the following day. (Doc. 216, at ¶ 10; Doc. 231, at ¶ 10.)

On his December 15, 2006 follow-up appointment, he was seen by physician's assistant, Lynn A. Maguschak ("P.A. Maguschak"). (Doc. 216, at ¶¶ 11, 42; Doc. 231, at ¶¶ 11, 42.) It was noted that he ambulated slowly, but was neurologically intact. (Doc. 216, at ¶ 11.) Mild edema in his left temporal area was noted. (Id.) He experienced pain upon palpation to his left ribs, but did not present with swelling or

---

[3] He had purchased shower shoes with a velcro strap from the commissary which he wore four or five times prior to the December 14, 2006 incident. (Doc. 216, at ¶¶ 34-35; Doc. 231, at ¶¶ 34-35.)

echymosis.[4] (Id.) A chest x-ray with attention to his left ribs was ordered. (Id.; Doc. 217-3, at 4.) He was instructed to take Tylenol #3 and Motrin as needed.[5] (Doc. 216, at ¶ 11.) He also states that although pain medication was ordered, he personally informed Maguschak and Bezdziecki "he went to the window to get this medication on a number of occasions and was told they did not have his medication." (Doc. 231, at ¶ 11, citing to medication chart.) "Plaintiff had a few remaining Motrin in his cell that were issued some time ago as self meds prior to his injuries but were not sufficient for the entire time that he suffered pain." (Doc. 232, at 10.)

On December 18, 2006, plaintiff received chest x-rays, with attention to his left ribs, due to a fall. (Doc. 217-1, at 5.) The x-rays were normal.[6] (Doc. 216, at ¶ 14.)

On December 21, 2006, plaintiff reported to sick call complaining of persistent pain in his left rib area. (Doc. 216, at ¶ 15; Doc. 231, at ¶ 15.) P.A. O'Brien observed some echymosis overlying the left 8th and 9th ribs. (Id.) There was tenderness, but no palpable deformity. (Doc. 216, at ¶ 15.) Plaintiff was instructed to take Tylenol #3 for pain management. (Id.) O'Brien also ordered additional

---

[4] Echymosis is the passage of blood from ruptured blood vessels into subcutaneous tissue, marked by a purple discoloration of the skin. http://medical-dictionary.thefreedictionary.com/ecchymosis

[5] On September 7, 2006, plaintiff was ordered Tylenol #3 for 180 days. On November 20, 2006, he was ordered Motrin, in addition to the Tylenol #3 until March 31, 2007. (Doc. 216, at ¶¶ 12, 13; Doc. 231, at ¶¶ 12, 13.)

[6] It was discovered in April, 2007, that the original x-rays were lost. (Doc. 217-1, at 5; Doc. 231, at ¶ 14.)

x-rays of the ribs. (Id.) The following week, he returned to sick call complaining of a cough and rib pain. P.A. O'Brien prescribed Guaifenesin and told him to return if his symptoms increased. (Doc. 216, at ¶ 17; Doc. 231, at ¶ 17.) Between December 21, 2006, and January 2, 2007, he underwent x-rays of his left ribs. (Doc. 216, at ¶ 16.) The x-rays were negative for any type of fracture or break. (Id.) Plaintiff has never seen x-ray results, but he testified at his deposition that O'Brien informed him that the x-ray results were normal and showed no fracture but that he had torn cartilage. (Id. at ¶¶ 48-49; Id. at ¶¶ 48-49.)

On January 9, 2007, he was again seen by P.A. O'Brien for complaints of a persistent cough and rib pain. O'Brien continued the Guaifenesin and ordered a chest x-ray and Bactrim. (Doc. 216, at ¶ 18: Doc. 231, at ¶ 18.) Two days later, he was given a chest x-ray, which was negative. (Id. at ¶ 19; Id. at ¶ 19.) He was then seen on March 16, 2007, requesting a refill of his Tylenol #3. (Id. at ¶ 20; Id. at ¶ 20.) O'Brien wrote a refill prescription.[7] (Id.)

## III. Discussion

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. See 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

---

[7] The statement of material facts includes subsequent medical treatment which will not be discussed because it is irrelevant to the claim against defendant Bezdziecki.

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

Plaintiff alleges that defendant Bezdziecki failed to examine him when he was brought to the medical department after his fall and ignored complaints that his pain medication was unavailable. To demonstrate a prima facie case of Eighth Amendment cruel and unusual punishment based on the denial of medical care, plaintiff must establish that defendants acted with deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976); Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993). There are two components to this standard. First, a plaintiff must make an "objective" showing that the deprivation was "sufficiently serious," or that the result of the defendant's denial was sufficiently serious. The deprivation sustained is required to be sufficiently serious because only "extreme deprivations" are sufficient to make out an Eighth Amendment claim. See Hudson v. McMillian, 503 U.S. 1, 9 (1992). Additionally, the plaintiff

7

must make a "subjective" showing that the prison official's actions were "deliberately indifferent." See Wilson, at 303. To establish deliberate indifference, an inmate must show that a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." See Farmer at 847.

The "deliberate indifference to serious medical needs" standard is obviously met when pain is intentionally inflicted on a prisoner, when the denial of reasonable requests for medical treatment exposes the inmate to undue suffering or the threat of tangible residual injury, or when, despite a clear need for medical care, there is an intentional refusal to provide that care. See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004) (quoting White v. Napoleon, 897 F.2d 103, 109 (1990); Monmouth County Corr. Inst. Inmates v. Lensario, 834 F.2d 326, 346 (3d Cir. 1987).

The prison's medical records establish that he was brought to the medical department on December 14, 2006, because he fell in the shower due to a loose shower shoe. Plaintiff contends that defendant Bezdziecki was deliberately indifferent when she failed to examine him. Defendants argue that "the medical records belie this assertion." (Doc. 215, at 14.) The Court agrees. According to the medical records, after being informed that plaintiff hit his head, left shoulder and ribs, Bezdziecki engaged in an objective assessment of plaintiff's condition. His vital signs were taken and it was noted that he had a hematoma on the left side of his head. He denied loss of consciousness and was alert and "oriented x 4." (Doc. 212-2, at 2.) He was not experiencing any nausea or vomiting and he reported no

vision problems. Hand grasps and "feet push/pull" were found to be equal and strong. (Id.) He rated his pain as a 3 or 4 on a scale of 1 to 10. At the conclusion of her evaluation, she directed him to report for sick call for follow-up care in the morning. Beyond plaintiff's unsupported allegations that he was never examined, and his bald assertion that the medical records have been falsified (Doc. 232, at 11), there is no evidence that defendant Bezdziecki acted with deliberate indifference to plaintiff's medical needs. Consequently, defendant is entitled to an entry of summary judgment on this claim.

Plaintiff also contends that defendant Bezdziecki ignored his complaints that his pain medication was unavailable. Nowhere in defendant Bezdziecki's progress notes is there a discussion of, or reference to, pain medication. Plaintiff submits a medication administration record charting the distribution of six medications from December 1, 2006, through December 31, 2006, to establish that his pre-existing prescriptions for Motrin and Tylenol # 3 were unavailable. Although this document suggests that he did not receive pain medication on the night of December 14, 2006, or on December 15, 2006, it does not establish that the medication was unavailable

or that defendant Bezdziecki was aware that the medication was unavailable.[8] Significantly, plaintiff concedes that he "had a few remaining Motrin in his cell that were issued some time ago as self meds prior to his injuries." (Doc. 232, at 10). And, despite his contention that the Motrin "were not sufficient for the entire time that he suffered pain," according to the medication administration record provided by plaintiff, beginning on December 16, 2006, and continuing through December 28, 2006, he routinely received pain medication in the form of "APAP W/Cod #3 Tablet," which is a substitute for "Tylenol w/Cod # 3 tab." (Id.; Doc. 231, at 30.) Based on the above, it cannot be found that the deprivation of pain medication for such a limited time period is extreme and, therefore, is not "sufficiently serious" to constitute an Eighth Amendment violation. Even if the deprivation was considered sufficiently serious, plaintiff's claim still fails as he has not come forward with any evidence that defendant Bezdziecki knew that he faced a substantial risk of serious

---

[8] It bears mentioning that this may not be the complete medication administration record for this time period. On September 7, 2006, a physician ordered a number of prescription medications for plaintiff. (Doc. 212-1, at 16.) Plavix, which was prescribed for ninety days, is documented. (Doc. 231, at 30.) In accordance with the prescription, the last dose of Plavix was administered on December 7, 2006. (Id.; Doc. 212-1, at 16.) Also, Dilantin and Vistaril, both of which were prescribed for 180 days, are included in the record as being self-medicated. (Doc. 231, at 30.) Yet, other daily medications do not appear. For example, included in that same September 7, 2006, physician's order was Metoprolol to be administered twice a day for 180 days, Isordil and CTM to be administered three times per day for 180 days, and Primidone to be administered daily in the a.m. and p.m. for 180 days. (Doc. 212-1, at 16.) The record provided by plaintiff does not reflect the distribution of these daily medications. (Doc. 231, at 30.) Nor does it reflect the distribution of Motrin which he was to receive twice a day until March 31, 2007. (Doc. 212-3, at 4.)

harm and disregarded that risk by failing to take reasonable measures to abate it. Defendant Bezdziecki is entitled to an entry of summary judgment.

## IV.     Conclusion

Based on the foregoing, defendants' motion (Doc. 200) will be granted with respect to defendant Bezdziecki.  The remainder of the motion will be stricken for failure to comply with Federal Rule of Civil Procedure 56(c) and L.R. 56.1.


                                                         S/ Christopher C. Conner
                                                        CHRISTOPHER C. CONNER
                                                        United States District Judge


Dated:        September 10, 2012

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PHILIP CARPENTER**, | : CIVIL ACTION NO. 1:08-CV-2233 |
| Plaintiff | : (Judge Conner) |
| v. | : |
| **SUPERINTENDENT KLOPTOSKI**, et al., | : |
| Defendants | : |

## ORDER

AND NOW, this 10th day of September, 2012, upon consideration of defendants' motion for summary judgment (Doc. 200) it is hereby ORDERED that:

1. Defendants' motion for summary judgment (Doc. 200) is GRANTED in part. The motion is granted with respect to the Eighth Amendment claim of inadequate medical care pending against defendant Bezdziecki, who is identified as "Nurse Irene" on the docket sheet.

2. Entry of judgment in favor of Bezdziecki and against plaintiff is DEFERRED pending the final disposition of this matter.

3. The motion is STRICKEN with respect to the remaining claims for failure to comply with Federal Rule of Civil Procedure 56(c) and L.R. 56.1.

4. Defendants are afforded until October 9, 2012, to re-file a properly supported motion for summary judgment as to these claims. Failure to do so will result in the remaining claims proceeding to trial.

    S/ Christopher C. Conner
    CHRISTOPHER C. CONNER
    United States District Judge