# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PHILIP CARPENTER**, | : | CIVIL ACTION NO. 1:08-CV-2233 |
| Plaintiff | : | (Judge Conner) |
| v. | : | |
| **SUPERINTENDENT KLOPTOSKI**, et al., | : | |
| Defendants | : | |

## **MEMORANDUM**

Plaintiff Philip Carpenter ("Carpenter" or plaintiff), a state inmate incarcerated at the State Correctional Institution at Dallas, Pennsylvania ("SCI-Dallas"), commenced this civil action on December 15, 2008. The matter is presently proceeding *via* an amended complaint filed on July 22, 2009. (Doc. 39.) Ripe for disposition is the motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, filed on behalf of defendants Kloptoski, Rendell, Beard, Burks, Varner, Lucas, Goldberg, Fogel, Ginnochetti, Leskowski, Miskell, Wynder, Mooney, McGrady, Demming, Kneiss, and Miller. (Doc. 246.) Defendants seek an entry of judgment on the remaining claims: (a) the Americans with Disabilities Act claim; (b) the First Amendment retaliation claim against defendant Miller; and (c) the Eighth Amendment conditions of confinement claim against Wynder, Mooney, McGrady and Miller. (Doc. 248, at 2.) For the reasons set forth below, the motion will be granted.

I.      **Standard of Review**

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact" and for which a jury trial would be an empty and unnecessary formality.  See FED. R. CIV. P. 56(c).  The burden of proof is upon the nonmoving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief.  Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the nonmoving party on the claims.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(c), (e).  Only if this threshold is met may the cause of action proceed.  Pappas, 331 F. Supp. 2d at 315.

II.     **Statement of Material Facts**

   A.     **Americans With Disabilities Act**

While incarcerated at SCI-Dallas, on or before February 9, 2009, Carpenter was informed that his single cell, or Z Code, status would be revoked.  (Doc. 168 ¶ 36.)  Thereafter, he submitted two "Inmate Disability Accommodation Request Form[s]" seeking a return to "Z Code" status, which would allow him to be held in a single cell without a cell mate as opposed to a double cell with a cell mate.  (Doc. 247, ¶¶ 1, 8-9, 18, Doc. 256, ¶¶ 1, 8-9, 18; Doc. 256-1, ¶¶ 1, 8-9, 18.)  Following two interviews, Dr. Jane Jesse, a psychiatrist under contract to provide psychiatric

2

services to inmates at SCI-Dallas, concluded that Carpenter did not have a serious medical need that required single cell status. (Doc. 142, ¶¶ 3, 9-10.) The Pennsylvania Department of Corrections never extended the accommodations Carpenter requested. (Doc. 247, ¶ 20; Doc. 256 ¶ 20; Doc. 256-1, ¶ 20.)

### B. Retaliation

Carpenter alleges that he was threatened by defendant Gaylen Miller in retaliation for pursuing the instant litigation. (Doc. 39, ¶¶ 2, 31) Carpenter's fellow inmate, Shawn Sharp, submitted an affidavit setting forth the following:

> 16. After the plaintiff filed this action, I personally observed Defendant Miller instruct the block officers to retaliate against the Plaintiff as I was housed at that time in the very front of the black at the 1st cell on the block.
>
> 17. I was standing right in front of the bubble when he gave this instruction.
>
> 18. Some time after he gave the two block officers that order Mr. Carpenter specifically received a misconduct per Mr. Miller's instructions.

(Doc. 256-2, ¶¶ 16-18.)

On May 12, 2009, a disciplinary hearing was conducted by hearing examiner defendant Miller on what appears to be charges of disobeying a direct order and presence in an unauthorized area. (Doc. 256-2, at 12-13.) Defendant Miller issued a disciplinary hearing report finding Carpenter guilty of "charge #43", reprimanded and warned Carpenter and referred the matter for informal resolution. (Id. at 12.)

Miller's sanction of reprimand and warning was dismissed by the Program Review Committee based on procedural defects. (Doc. 247, ¶ 25; Doc. 256 ¶ 25.)

Carpenter also contends that he was stripped of his single cell status and lost his prison employment. (Doc. 39, ¶¶ 2, 31; Doc. 247, ¶¶ 21-27; Doc. 256, ¶¶ 21-27; Doc. 256-1, ¶¶ 21-27.)

Since the inception of his incarceration at SCI-Dallas, plaintiff has filed sixteen grievances. (Doc. 247, ¶ 26; Doc. 256, ¶ 26; Doc. 256-1 ¶ 26.) He has also vigorously litigated every aspect of this case by filing numerous motions and briefs. (Doc. 247, ¶ 29; Doc. 256, ¶ 29; 256-1, ¶ 29.)

### C. Conditions of Confinement

Defendants Wynder, Mooney, McGrady and Miller contend that plaintiff never filed a grievance against them asserting prison conditions amounting to cruel and unusual punishment. (Doc. 247, ¶¶ 31, 33.) Carpenter concedes that he did not raise the conditions of confinement claim in the original grievance, but states that "in grievance Appeal #174511 . . . [he] specifically brought up the issues he raised in this complaint at paragraph #5." (Doc. 256, ¶ 31.) Paragraph 5 of Carpenter's "Appeal to Superintendent of Grievance # 174511" reads, in pertinent part, that "[i]nstead of adequate treatment, I was sent back to the block after severe head trauma to a cell that does not have heat, in the dead of winter, and no Emergency Call Button in case of emergency wherein I wasn't able to yell to the CO." (Doc. 256-2, at 10.) Superintendent Wynder responded to the appeal by stating, *inter alia*, "You provided additional information/concerns in your appeal; however, you failed

4

to provide this information in your initial grievance and therefore, it will not be addressed." (Doc. 217-3, at 4.) Carpenter appealed to the Chief Grievance Officer who also informed Carpenter that "[a]ny issues not included in your original grievance will not be addressed at final review." (Id. at 2.)

**III.   Discussion**

    **A.   Americans With Disabilities Act**

Title II of the Americans With Disabilities Act ("ADA") provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. As used in Title II of the ADA, "public entity" is defined as: "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority (as defined in section 103(8) of the Rail Passenger Service Act [49 U.S.C.S. § 24102(4) ] )." 42 U.S.C. § 12131(a). State prisons fall squarely within the statutory definition of "public entity" in Title II of the ADA. Pennsylvania Dep't of Corr. v. Yeskey, 524 U.S. 206, 210 (1998). However, the plain language of § 12132 applies only to public entities not individuals. Yeskey v. Commonwealth of Pennsylvania, 76 F. Supp.2d 572, 575 (M.D.Pa. 1999) (holding that individuals are not liable under Title II because it prohibits discrimination in programs of a "public entity" or
5

discrimination "by any such entity" and "public entity" is not defined in Title II to include individuals).

None of the moving defendants qualify as a public entity. Therefore, the ADA is inapplicable to them and the motion for summary judgment will be granted.

### B.     Constitutional Claims

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. See 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

####       1.     First Amendment

The First Amendment offers protection for a wide variety of expressive activities. See U.S. Const. amend I. These rights are lessened, but not extinguished in the prison context, where legitimate penological interests must be considered in

6

assessing the constitutionality of official conduct. See Turner v. Safley, 482 U.S. 78, 89 (1987). Retaliation for expressive activities can infringe upon an individual's rights under the First Amendment. See Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000). To prevail on a retaliation claim under 42 U.S.C. § 1983, plaintiff must demonstrate (1) that he was engaged in protected activity; (2) that he suffered an "adverse action" by government officials; and (3) that there is "a causal link between the exercise of his constitutional rights and the adverse action taken against him." Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001) (quoting Allah, 229 F.3d at 225). The last Rauser prong requires a prisoner to establish a causal link between the exercise of his constitutional rights and the adverse action taken against him. The court employs a burden-shifting regime to determine whether a causal link exists. The prisoner bears the initial burden of proving that his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him or retaliate against him. See id. (citing Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)). The burden then shifts to the defendants to prove by a preponderance of the evidence that they would have taken the same disciplinary action even in the absence of the protected activity. See id. If defendants prove that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest, they will prevail in the retaliation action. See id. at 334.

Carpenter asserts that the alleged retaliatory conduct by defendant Miller was undertaken in response to his pursuit of the instant federal lawsuit. The filing

7

of a lawsuit is protected activity under the First Amendment right of prisoners to petition the court. Anderson v. Davila, 125 F.3d 148, 161 (3d Cir. 1997); Milhouse v. Carlson, 652 F.2d 371, 373–74 (3d Cir. 1981). Thus, the first prong of Rauser, *i.e.*, that the plaintiff be engaged in a constitutionally protected activity, has been satisfied.

Once it is determined that the inmate was engaged in protected conduct, he must demonstrate that he has suffered some adverse action at the hands of prison officials. See Rauser, 241 F.3d at 333 (citing Allah, 229 F.3d at 225). To show an "adverse action," the plaintiff must demonstrate that defendants' actions were "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." Allah v. Al-Hafeez, 208 F. Supp. 2d 520, 535 (E.D. Pa. 2002), quoting Allah, 229 F.3d at 225. Carpenter alleges that he was the victim of adverse action in the form of the filing of false misconduct charges against him, revocation of his single cell status, and the loss of his prison job. The revocation of his single cell status and the loss of his prison job constitute adverse action. However, because retaliation claims arising from alleged false misconducts can be easily fabricated, this Court must view them with sufficient skepticism to avoid becoming entangled in disciplinary actions taken against prisoners. See Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996); Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995); Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995). Notably, the filing of a single prison disciplinary report is not actionable as prohibited "retaliation" unless the report is, in fact, false. Walker v. Campbell, Civ. No. 09–282, 2011 WL 6153104, at *7 (W.D.Pa. Oct. 31, 2011); See also Harris -Debardelaben v. Johnson, 121 F.3d 708, (6th

Cir. 1997)(affirming summary judgment in the absence of any indication that disciplinary charges were false or that appellant suffered any impediment in his ability to file grievances). Following an administrative hearing before defendant Miller on May 12, 2009, Carpenter was found guilty of the underlying disciplinary infraction and was reprimanded and warned. (Doc. 256-2, at 13.) He appealed to the Program Review Committee, which dismissed the finding of guilt and the sanctions of reprimand and warning based solely on the ground that the procedures governing the conversion of an informal resolution to a misconduct were not followed. (Doc. 247-3). The merits of the underlying charges were not addressed. Consequently, this isolated incident does not constitute adverse action as there is no indication that the disciplinary charges were indeed false.

In analyzing the third element the court must determine whether there is a causal connection between the exercise of the constitutional right and the adverse action. The plaintiff must show that the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action. This "motivation" factor may be established by alleging a chronology of events from which retaliation plausibly may be inferred. Tighe v. Wall, 100 F.3d 41, 42 (5th Cir. 1996); Goff v. Burton, 91 F.3d 1188 (8th Cir. 1996); Pride v. Peters, 72 F.3d 132 (Table) (7th Cir. 1995). It is plaintiff's burden to prove that defendants were motivated by retaliation. Hannon v. Speck, No. 87-3212, 1988 WL 131367, at *4 (E.D. Pa. Dec. 6, 1988) ("In bringing a § 1983 action alleging such retaliation, an inmate faces a substantial burden in attempting to prove that the actual motivating factor .

9

. . was as he alleged.") (internal quotes and citation omitted), aff'd, 888 F.2d 1380 (3d Cir. 1989) (Table). Where the prisoner seeks to establish this causal link based upon the temporal proximity between the protected conduct and the alleged retaliatory act, "the timing of the alleged retaliatory action must be unusually suggestive before a causal link will be inferred." Krouse v. American Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997); Rauser, 241 F.3d at 334; see also Thomas v. Town of Hammonton, 351 F.3d 108, 114 (3d Cir. 2003) (concluding that the temporal proximity, nearly six months, is not unduly suggestive and does not sufficiently establish any causal link).

In revisiting the false misconduct charge, even if the incident was sufficient to constitute adverse action, this claim would still fail because Carpenter fails to establish any causal connection between the misconduct charge and pursuit of the instant litigation. This action was commenced on December 15, 2008. (Doc. 1.) Miller was not named as a defendant at that time and Carpenter does not establish that he had notice of the lawsuit. Moreover, the inclusion of Miller as a defendant in the amended complaint is insufficient to establish a causal connection because the amended complaint was not filed until July 22, 2009, more than two months after the date that Miller conducted the administrative hearing. (Doc. 39). Further, the affidavit of Shawn Sharp, Carpenter's fellow inmate, is simply too vague to shed any light on either the timing of the comment or whether Miller had notice as there is no reference to time in the affidavit.

Nor can Carpenter establish that there is a causal link between his pursuit of this litigation and the revocation of his single cell status or the loss of his prison job. The record clearly establishes that following two interviews with Carpenter, Dr. Jesse concluded that Carpenter did not have a serious medical need that required single cell or Z Code status. (Doc. 214, at 8.) As for the loss of his prison job, the record is devoid of any evidence of time or circumstances concerning Carpenter's claim that he was summarily removed from his job in retaliation for the filing of the instant litigation.

Defendant Miller is entitled to an entry of summary judgment on the retaliation claim.

  2. Eighth Amendment

Defendants Wynder, Mooney, McGrady and Miller seek summary judgment on the ground that Carpenter failed to properly administratively exhaust the conditions of confinement claim. The Pennsylvania Department of Corrections ("DOC") has an Inmate Grievance System which permits any inmate to seek review of problems that may arise during the courts of confinement. 37 Pa.Code § 93.9(a); see also www.cor.state.pa.us, DOC Policies, Policy No. DC–ADM 804, Inmate Grievance System. After an attempt to resolve any problems informally, an inmate may submit a written grievance to the facility's Grievance Coordinator for initial review. An inmate may then appeal an adverse decision of the Grievance Coordinator to the Superintendent of the institution, and can finally appeal to the Secretary of the DOC Office of Inmate Grievances and Appeals. See Booth v.

11

Churner, 206 F.3d 289, 293 n. 2 (3d Cir. 2000) (outlining Pennsylvania's grievance review process).

Under the Prison Litigation Reform Act of 1996 (the "PLRA"), a prisoner is required to pursue all avenues of relief available within the prison's grievance system before bringing a federal civil rights action concerning prison conditions. See 42 U.S.C. § 1997e(a); Booth v. Churner, 532 U.S. 731, 741 (2001). The exhaustion requirement is mandatory, see Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007); see also Booth, 532 U.S. at 741 (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"); Nyhuis v. Reno, 204 F.3d 65, 67 (3d Cir. 2000) (same), and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

Courts have also imposed a procedural default component on the exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court. Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004). Inmates who fail to fully, or timely, complete the prison grievance process, or who fail to identify the named defendants, are barred from subsequently litigating claims in federal court. See Spruill, 372 F.3d 218.. "As for the failure to the identify named defendants on the grievance form, . . . to the extent the identity of a defendant was "a fact relevant to the claim," Pennsylvania's prison grievance policy mandated that the identification

be included in the inmate's statement of facts on the grievance form. And, . . . in the absence of any justifiable excuse, a Pennsylvania inmate's failure to properly identify a defendant constituted a failure to properly exhaust his administrative remedies under the PLRA." Williams v. Pennsylvania Dep't. of Corr., 146 F. App'x 554, 557 (3d Cir. 2005).

Carpenter does not dispute that he failed to include his conditions of confinement claim in grievance174511, but argues that the inclusion of references to an unheated cell and insufficient emergency call system in the appeals of the grievance was sufficient to constitute notice to the defendants. Defendants contend that this was insufficient notice. The Court agrees. At both levels of appeal of grievance 174511, Carpenter was notified that any issues raised in the appeal that were not raised in the original grievance would not be considered. Carpenter took no action to remedy this defect. Moreover, even if the Court were to liberally construe the issue as having been raised during the exhaustion procedure, he is unable to overcome the glaring defect of failing to identify the individuals responsible for the conditions. "[I]t is clear, regardless of the purpose of the requirement, that Spruill requires the prisoner-grievant-plaintiff to name in the grievance those he eventually sues, upon pain of procedural default." Hemingway v. Ellers, No. 07–1764, 2008 WL 3540526, *11 (M.D.Pa. Aug.12, 2008). Moreover, under Spruill, it is plaintiff's burden to explain why he did not name a defendant in the grievance. See Spruill, 372 F.3d at 234 (Spruill did not [name Brown in his grievance] and has offered no explanation for his failure to do so."). Carpenter has

13

offers no explanation in his affidavit as to why he did not name defendants in his grievance appeals. (Doc. 256-2.) Defendants are entitled to an entry of summary judgment based on Carpenter's failure to exhaust the administrative review process with respect to the conditions of his confinement.

**IV.** **Conclusion**

Based on the foregoing, defendants' motion for summary judgment (Doc. 246) will be granted. An appropriate order will issue.


    S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge


Dated:       April 8, 2013

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PHILIP CARPENTER**, | : | CIVIL ACTION NO. 1:08-CV-2233 |
| | : | |
| **Plaintiff** | : | (Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| **SUPERINTENDENT KLOPTOSKI**, | : | |
| et al., | : | |
| | : | |
| **Defendants** | : | |

## **ORDER**

AND NOW, this 8th day of April, 2013, upon consideration of defendants' motion for summary judgment (Doc. 246), it is hereby ORDERED that:

1. Defendants' motion for summary judgment (Doc. 246) is GRANTED. Judgment shall be ENTERED as follows:

   a. Judgment shall be entered in favor of defendants Kloptoski, Rendell, Beard, Burks, Varner, Lucas, Goldberg, Fogel, Ginnochetti, Leskowski, Miskell, Wynder, Mooney, McGrady, Demming, Kneiss, and Miller and against plaintiff on the Americans with Disabilities Act claim;

   b. Judgment shall be entered in favor of defendant Miller and against plaintiff on the First Amendment retaliation claim;

   c. Judgment shall be entered in favor of defendants Wynder, Mooney, McGrady and Miller and against plaintiff on the Eighth Amendment conditions of confinement claim.

2. As concerns those instances in which entry of judgment was deferred pending final resolution of this matter (Docs. 214, 219, 240), the Clerk of Court shall also ENTER judgment as follows:

a. Judgment shall be entered in favor of defendants Bohinski, Wisniewski, O'Brien, and Bezdziecki, who is identified as "Nurse Irene," and against plaintiff with respect to the Eighth Amendment claim of inadequate medical care (Docs. 219, 240);

b. Judgment shall be entered in favor of defendant Jesse and against plaintiff on the Fourteenth Amendment due process claim and the Eighth Amendment claim of inadequate medical treatment (Doc. 214).

3. The Clerk of Court is further directed to CLOSE this case.

4. Any appeal from this order is DEEMED frivolous and not in good faith. See 28 U.S.C. § 1915(a)(3).

S/ Christopher C. Conner  
CHRISTOPHER C. CONNER  
United States District Judge